**EXHIBIT A**

**<u>July 8 Plan</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| JOONKO DIVERSITY, INC., | ) | Case No. 24-11007 (MFW) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11
## OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR

---

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED THE RELATED DISCLOSURE STATE-MENT AND SOLICITATION MATERIALS. THE INFORMATION IN THIS PLAN AND THE RELATED DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.**

---

**MCDERMOTT WILL & EMERY LLP**
David R. Hurst (I.D. No. 3743)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
dhurst@mwe.com

- and -

Catherine Lee
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
clee@mwe.com

*Counsel for Debtor and*
*Debtor-in-Possession*

Dated: Wilmington, Delaware
         July 8, 2024

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARTICLE I

DEFINITIONS AND RULES OF INTERPRETATION .................................................... 1
    A.    Rules of Construction ........................................................................ 1
    B.    Definitions ........................................................................................ 1
    C.    Rules of Interpretation .................................................................... 13
    D.    Computation of Time ...................................................................... 14
    E.    Governing Law ................................................................................ 14

ARTICLE II

CLASSIFICATION OF CLAIMS AND INTERESTS ..................................................... 14
    A.    Introduction .................................................................................... 14
    B.    Unclassified Claims ........................................................................ 14
        1.    Administrative Claims ........................................................ 14
        2.    Priority Tax Claims ............................................................ 14
    C.    Unimpaired Classes of Claims ........................................................ 15
        1.    Class 1: Miscellaneous Secured Claims ............................ 15
        2.    Class 2: Other Priority Claims .......................................... 15
        3.    Class 3: General Unsecured Claims ................................... 15
    D.    Impaired Classes of Claims ............................................................ 15
        1.    Class 4: Subordinated 510(b) Claims ................................ 15
        2.    Class 5: Subordinated 510(c) Claims ................................ 15
    E.    Impaired Class of Interests ............................................................ 15
        1.    Class 6: Old Preferred Stock ............................................. 15
        2.    Class 7: Old Common Stock .............................................. 15
        3.    Class 8: Other Interests ..................................................... 15

ARTICLE III

TREATMENT OF CLAIMS AND INTERESTS ............................................................. 16
    A.    Unclassified Claims ........................................................................ 16
        1.    Administrative Claims ........................................................ 16
        2.    Priority Tax Claims ............................................................ 16
    B.    Unimpaired Claims ......................................................................... 16
        1.    Class 1: Miscellaneous Secured Claims ............................ 16
        2.    Class 2: Other Priority Claim ............................................ 17
        3.    Class 3: General Unsecured Claims ................................... 17
    C.    Impaired Claims ............................................................................. 17
        1.    Class 4: Subordinated 510(b) Claims ................................ 17
        2.    Class 5: Subordinated 510(c) Claims ................................ 17
    D.    Interests ......................................................................................... 17
        1.    Class 6: Old Preferred Stock ............................................. 17
        2.    Class 7: Old Common Stock .............................................. 18
        3.    Class 8: Other Interests ..................................................... 18

E.    Special Provision Regarding Unimpaired Claims ............................................. 18
F.    Allowed Claims and Interests ........................................................................... 18

ARTICLE IV

ACCEPTANCE OR REJECTION OF THE PLAN ............................................................ 18
A.    Acceptance by an Impaired Class ..................................................................... 18
B.    Presumed Acceptances by Unimpaired Classes ............................................... 19
C.    Classes Deemed to Reject Plan ........................................................................ 19
D.    Impaired Class of Interests Entitled to Vote ................................................... 19
E.    Vacant Classes .................................................................................................. 19
F.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .............. 19

ARTICLE V

MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................... 20
A.    Corporate Action ............................................................................................... 20
      1.    Cancellation of Existing Securities and Agreements ........................... 20
      2.    Continued Corporate Existence ............................................................ 20
      3.    Post-Effective Date Corporate Governance .......................................... 21
      4.    No Further Action ................................................................................. 21
      5.    Effectuating Documents; Further Transactions .................................... 21
      6.    Dissolution of Liquidating Joonko ....................................................... 21
B.    Legal Representation and Privilege Matters ..................................................... 22
      1.    Legal Representation of the Debtor After the Effective Date ............... 22
      2.    Transfer of Evidentiary Privileges; Document Requests ...................... 22
C.    The Plan Administrator ..................................................................................... 22
      1.    Appointment of the Plan Administrator ................................................ 22
      2.    Compensation of the Plan Administrator .............................................. 23
      3.    Indemnification of the Plan Administrator ........................................... 23
      4.    Insurance for the Plan Administrator .................................................... 23
      5.    Authority to Object to Claims and Interests and to Settle Disputed Claims ........ 23
D.    Vesting of Assets in Liquidating Joonko ......................................................... 23
E.    Accounts and Reserves ..................................................................................... 24
      1.    Professional Fee Reserve ...................................................................... 24
      2.    Administrative Claims Reserve ............................................................. 24
      3.    Indemnification Reserve ....................................................................... 25
      4.    Operating Reserve ................................................................................. 25
      5.    Other Reserves ...................................................................................... 25
F.    Exemption from Certain Transfer Taxes .......................................................... 25
G.    Applicability of Section 1145 of the Bankruptcy Code ................................... 26
H.    Preservation of Causes of Action; Settlement of Causes of Action ................. 26
      1.    Preservation of Causes of Action ......................................................... 26
      2.    Settlement of Causes of Action ............................................................ 27

ARTICLE VI

PROVISIONS GOVERNING DISTRIBUTIONS ............................................................ 27
A.    Distributions on Allowed Claims ..................................................................... 27
B.    Disbursing Agent .............................................................................................. 27
C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...... 28

|  | 1. | Delivery of Distributions in General | 28 |
|  | 2. | Undeliverable and Unclaimed Distributions | 28 |
| D. | | Means of Cash Payment | 29 |
| E. | | Interest on Claims | 29 |
| F. | | Withholding and Reporting Requirements | 29 |
| G. | | Setoffs | 30 |
| H. | | Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims and Disputed Interests | 30 |
|  | 1. | Objection Deadline; Prosecution of Objections | 30 |
|  | 2. | No Distributions Pending Allowance | 31 |
|  | 3. | Disputed Claims Reserve | 31 |
|  | 4. | Disputed Interests Reserve | 31 |
|  | 5. | Distributions After Allowance | 32 |
|  | 6. | De Minimis Distributions | 32 |
|  | 7. | Fractional Dollars | 32 |
|  | 8. | Allocation of Plan Distributions Between Principal and Interest | 33 |
|  | 9. | Distribution Record Date | 33 |

ARTICLE VII

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 33
| A. | Rejected Contracts and Leases | 33 |
| B. | Rejection Damages Bar Date | 33 |

ARTICLE VIII

CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ... 34
| A. | Conditions to Confirmation | 34 |
| B. | Conditions to Effective Date | 34 |
| C. | Waiver of Conditions | 35 |
| D. | Consequences of Non-Occurrence of Effective Date | 35 |

ARTICLE IX

ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ... 35
| A. | | Professional Fee Claims | 35 |
|  | 1. | Final Fee Applications | 35 |
|  | 2. | Employment of Professionals after the Effective Date | 35 |
| B. | | Substantial Contribution Claims | 36 |
| C. | | Other Administrative Claims | 36 |

ARTICLE X

EFFECTS OF CONFIRMATION ... 36
| A. | | Binding Effect | 36 |
| B. | | Discharge of the Debtor | 36 |
| C. | | Releases and Exculpation | 37 |
|  | 1. | Releases by the Debtor | 37 |
|  | 2. | Exculpation and Limitation of Liability | 37 |
| D. | | Injunction | 38 |

E.     Term of Bankruptcy Injunction and Stays ........................................................................ 38

F.     Compromises and Settlements ........................................................................................ 38

G.    Satisfaction of Subordination Rights ............................................................................. 38

ARTICLE XI

RETENTION OF JURISDICTION ................................................................................................... 39

A.    Retention of Jurisdiction by the Court .......................................................................... 39

B.    Failure of Court to Exercise Jurisdiction ...................................................................... 41

ARTICLE XII

MISCELLANEOUS PROVISIONS ................................................................................................... 41

A.    Modifications and Amendments .................................................................................... 41

B.    Severability of Plan Provisions ..................................................................................... 41

C.    Successors and Assigns ................................................................................................. 42

D.    Payment of Statutory Fees ............................................................................................ 42

E.     Revocation, Withdrawal or Non-Consummation ........................................................... 42

F.     Service of Documents .................................................................................................... 42

G.    Plan Supplement(s) ....................................................................................................... 43

**TABLE OF EXHIBITS**

| Exhibit | Title |
|---------|-------|
| A | Plan Administration Agreement |
| B | Second Amended and Restated Certificate of Incorporation of Joonko Diversity Inc. |
| C | Amended and Restated By-laws of Joonko Diversity Inc. |
| D | Contracts to Be Assumed Under Plan |
| E | Non-Exclusive List of Retained Claims and Causes of Action |

# INTRODUCTION[1]

Joonko Diversity Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 Case, proposes the following plan of liquidation. The Plan contemplates the liquidation of the Debtor and the resolution of outstanding Claims against and Interests in the Debtor pursuant to section 1121(a) of the Bankruptcy Code. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. For a discussion of the Debtor's history, businesses, the Chapter 11 Case, risk factors, a summary of the Plan and certain other related matters, reference is hereby made to the Disclosure Statement that is being distributed herewith. In the event of any inconsistencies between the Plan and the Disclosure Statement, the terms and provisions of the Plan shall control.

All Holders of Claims and Interests that are eligible to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and Article XII.A of the Plan, the Debtor reserves the right to alter, amend, modify (one or more times), revoke or withdraw the Plan prior to its substantial consummation.

## ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

### A.    Rules of Construction

For purposes of the Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article I of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B.    Definitions

**1.1    "503(b)(9) Claim"** means a Claim arising under section 503(b)(9) of the Bankruptcy Code against the Debtor, which were to be Filed against the Debtor on or before the 503(b)(9) Claims Bar Date.

**1.2    "503(b)(9) Claims Bar Date"** means July 18, 2024 at 5:00 p.m. (Eastern Time), as established by the Bar Date Order.

**1.3    "Administrative and Priority Claims Estimate"** means, as of the Effective Date, the estimated amount, exclusive of Professional Fee Claims, of all unpaid Claims that shall

---

[1]    Capitalized terms used in this Introduction shall have the meanings ascribed to such terms in Article I hereof.

be Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims.

1.4    **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority in payment under sections 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and Claims by Governmental Units for taxes accruing after the Petition Date (but excluding Claims related to taxes accruing on or before the Petition Date); (b) Professional Fee Claims; (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930; (d) obligations designated as Administrative Claims pursuant to an order of the Court; and (e) 503(b)(9) Claims.

1.5    **"Administrative Claims Bar Date"** means for Administrative Claims, other than 503(b)(9) Claims and Professional Fee Claims, the date that falls on the thirtieth (30th) day following the Effective Date, in each case by which Holders of Administrative Claims shall File with the Claims Agent and serve on Liquidating Joonko and the Plan Administrator, requests for payment, in writing, together with supporting documents, substantially complying with the Bar Date Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

1.6    **"Administrative Claims Objection Deadline"** means the deadline for filing objections to requests for payment of Administrative Claims Filed on or before the Administrative Claims Bar Date, which deadline shall be ninety (90) days after the Effective Date, or such later date as may be ordered by the Court.

1.7    **"Administrative Claims Reserve"** means the reserve of Cash established and maintained by Debtor or Liquidating Joonko for the benefit of Holders of Allowed Administrative Claims (exclusive of Holders of Professional Fee Claims, the reserve for which Holders shall be the Professional Fee Reserve), Allowed Priority Tax Claims and Allowed Other Priority Claims in an amount equal to the Administrative and Priority Claims Estimate.

1.8    **"Affiliate"** means **"affiliate"** as defined in section 101(2) of the Bankruptcy Code.

1.9    **"Aggregate Original Issue Price"** means, for each Holder of Old Preferred Stock, the aggregate original issue price of such Holder's Old Preferred Stock calculated by multiplying the number of shares of each series of Old Preferred Stock held by such Holder by that series' Original Issue Price, and summing the amounts calculated for each series of Old Preferred Stock held.

1.10    **"Allowed"** means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest in the specified Class or of a specified type.

**1.11** **"Allowed Claim"** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Court, (b) that has been Scheduled as a liquidated, non-contingent and undisputed Claim in an amount greater than zero in the Schedules, and the Schedules have not been amended with respect to such Claim on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court, (c) that is the subject of a timely Filed Proof of Claim and either (i) no objection to its allowance has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (ii) any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount (x) in the Plan or (y) after the Effective Date, by Liquidating Joonko in writing; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Court (if such written request is required) in each case as to which (a) the Debtor or Liquidating Joonko, as applicable, or any other party in interest (x) has not Filed an objection on or before the Administrative Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (y) has interposed a timely objection and such objection has been settled, waived through payment or withdrawn, or has been denied by Final Order, or (b) after the Effective Date, Liquidating Joonko has expressly allowed in a liquidated amount in writing.  For purposes of computing Distributions under the Plan, a Claim that has been deemed "Allowed" shall not include interest, fees, costs or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in the Plan.

**1.12** **"Allowed Interest"** means an Interest (a) that has been allowed by a Final Order of the Court, (b) that is listed on the Interest Holders List and as to which no Proof of Interest has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) that is the subject of a timely Filed Proof of Interest and either (i) no objection to its allowance has been Filed on or before the Interests Objection Deadline or the expiration of such other applicable period fixed by the Court or (ii) any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied by a Final Order.

**1.13** **"Available Cash"** means all Cash held by Liquidating Joonko as of the date ten (10) Business Days prior to any Periodic Distribution Date, other than Restricted Cash.

**1.14** **"Avoidance Actions"** means any and all claims and causes of action of the Debtor arising under chapter 5 of the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549 and 550 thereof, or their state law analogs.

**1.15** **"Ballot"** means each of the ballot forms distributed with the Disclosure Statement to Holders of Impaired Claims and Impaired Interests entitled to vote under Article IV.D hereof in connection with the solicitation of acceptances of the Plan.

**1.16** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Case.

**1.17** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms and the Local Rules, as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Case.

**1.18** **"Bar Date"** means, with respect to any particular Claim or Interest, the specific date set by the Court as the last day for Filing Proofs of Claim and Proofs of Interest against the Debtor in the Chapter 11 Case for that specific Claim or Interest.

**1.19** **"Bar Date Motion"** means the *Motion of Debtor for Entry of Order (I) Establishing Bar Dates for Filing Claims Against and Interests In the Debtor and (II) Approving Form and Manner of Notice Thereof* [Docket No. 32].

**1.20** **"Bar Date Order"** means the *Order (I) Establishing Bar Dates for Filing Claims Against and Interests in the Debtor and (II) Approving Form and Manner of Notice Thereof* [Docket No. 55].

**1.21** **"Business Day"** means any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.22** **"Cash"** means legal tender of the United States of America or equivalents thereof.

**1.23** **"Causes of Action"** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, through and including the Effective Date, that the Debtor and/or the Estate may hold against any Person or Entity, except those Persons and Entities released pursuant to Article X.C.1 of the Plan.  A non-exclusive list of retained Causes of Action is set forth on <u>Exhibit E</u> hereto.

**1.24** **"Chapter 11 Case"** means the chapter 11 case commenced by the Debtor and administered under case number 24-11007 (MFW) in the Court.

**1.25** **"Claim"** means a claim against the Debtor, whether or not asserted, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.26** **"Claimholder"** means the Holder of a Claim.

**1.27** **"Claims Agent"** means BMC Group, Inc.

**1.28** **"Claims Objection Deadline"** means the last day for filing objections to Claims (other than Claims for which no objection or request for estimation is required), which day shall be three hundred sixty-five (365) days after the Effective Date, or such later date as may be ordered by the Court.

**1.29** **"Class"** means each category or group of Holders of Claims or Interests that has been designated as a class in Article III of the Plan.

**1.30** **"Collateral"** means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law.

**1.31** **"Confirmation"** means the entry of the Confirmation Order, subject to all conditions specified in Article VIII.A having been satisfied or waived pursuant to Article VIII.C.

**1.32** **"Confirmation Date"** means the date of entry of the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

**1.33** **"Confirmation Hearing"** means the hearing(s) before the Court to consider confirmation of the Plan and related matters pursuant to section 1128 of the Bankruptcy Code, as such hearing(s) may be adjourned or continued from time to time.

**1.34** **"Confirmation Order"** means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.35** **"Consummation"** means the occurrence of the Effective Date.

**1.36** **"Contingent"** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.37** **"Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Case.

**1.38** **"Creditor"** means any Person or Entity that holds a Claim against the Debtor.

**1.39** **"Debtor"** means Joonko Diversity Inc., a Delaware corporation.

**1.40** **"Delaware General Corporation Law"** has the meaning ascribed to such term in Article V.A.2 of the Plan.

**1.41** **"Disallowed Claim"** means a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, (c) is not Scheduled, and as to which (i) no Proof of Claim has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or

under applicable law, and (ii) no request for payment of an Administrative Claim has been Filed by the Administrative Claims Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (d) after the Effective Date, has been disallowed in a written agreement by and between Liquidating Joonko and the Holder of such Claim.

1.42 **"Disallowed Interest"** means an Interest that (a) has been disallowed by a Final Order, (b) is not listed on the Interest Holders List and as to which no Proof of Interest has been Filed by the Bar Date or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law or (c) after the Effective Date, has been disallowed in a written agreement by and between Liquidating Joonko and the Holder of such Interest.

1.43 **"Disbursing Agent"** means Liquidating Joonko and/or the Plan Administrator; provided, however, that Liquidating Joonko or the Plan Administrator may, in its discretion, retain a third party to act as Disbursing Agent.

1.44 **"Disclosure Statement"** means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as the same may be amended, supplemented, revised or modified from time to time, as approved by the Court pursuant to the Solicitation Procedures Order.

1.45 **"Disputed Claim"** means a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim.

1.46 **"Disputed Claim Amount"** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to a Disputed Claim; (ii) an amount agreed to by the Debtor or Liquidating Joonko, as applicable, and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Claim is estimated by the Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor or Liquidating Joonko, as applicable, and the Holder of such Disputed Claim or (ii) the amount estimated by the Court with respect to such Disputed Claim; or (c) if the Claim is a Disallowed Claim, zero.

1.47 **"Disputed Claims Reserve"** means the reserve of Cash established and maintained by Liquidating Joonko for the payment of Disputed Claims that become Allowed Claims after the Effective Date.

1.48 **"Disputed Interest"** means an Interest that is neither an Allowed Interest nor a Disallowed Interest.

1.49 **"Disputed Interest Amount"** means (a) if a liquidated amount is set forth in the Proof of Interest relating to a Disputed Interest, such liquidated amount; (b) if sufficient information is set forth in the Proof of Interest relating to a Disputed Interest to determine the Holder's Aggregate Original Issue Price, the Holder's Aggregate Original Issue Price; (c) an amount agreed to by the Debtor or Liquidating Joonko, as applicable, and the Holder of such Disputed Interest; or (d) if the Interest is a Disallowed Interest, zero.

6

**1.50** **"Disputed Interests Reserve"** means the reserve of Cash established and maintained by Liquidating Joonko for the payment of Disputed Interests that become Allowed Interests after the Effective Date.

**1.51** **"Dissolution Requirements"** has the meaning ascribed to such term in Article V.A.6 of the Plan.

**1.52** **"Distribution"** means the distributions to be made by the Disbursing Agent in accordance with the Plan of, as the case may be: (a) Cash or (b) any other consideration or residual value distributed to Holders of Allowed Claims and Allowed Interests under the terms and provisions of the Plan.

**1.53** **"Distribution Date"** means the Effective Date or as soon as reasonably practicable thereafter.

**1.54** **"Distribution Record Date"** means the record date for the purpose of determining Holders of Allowed Claims and Allowed Interests entitled to receive Distributions under the Plan on account of such Allowed Claims and Allowed Interests, which date shall be the Confirmation Date or such other date designated in the Confirmation Order or any subsequent Court order.

**1.55** **"Effective Date"** means the first Business Day on which all conditions to the consummation of the Plan set forth in Article VIII.B hereof have been satisfied or waived in accordance with Article VIII.C.

**1.56** **"Entity"** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

**1.57** **"Estate"** means the estate of the Debtor created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case on the Petition Date.

**1.58** **"Executory Contract"** means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.59** **"Exhibit"** means an exhibit attached either to the Plan or the Disclosure Statement.

**1.60** **"File," "Filed"** or **"Filing"** means, respectively, file, filed or filing with the Court or its authorized designee in the Chapter 11 Case.

**1.61** **"Final Fee Applications"** has the meaning ascribed to such term in Article IX.A.1 of the Plan.

**1.62** **"Final Order"** means an order of the Court (x) as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, rehearing or new trial shall then be pending; (y) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (z) in the event that an appeal, writ of certiorari,

reargument, rehearing or new trial has been sought, as to which (i) such order of the Court shall have been affirmed by the highest court to which such order is appealed, (ii) certiorari has been denied as to such order, or (iii) reargument or rehearing or new trial from such order shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or new trial shall have expired without such actions having been taken.

1.63    **"General Bar Date"** means July 18, 2024 at 5:00 p.m. (Eastern Time) for (i) Interests and (ii) Claims arising on or before the Petition Date, including General Unsecured Claims, Other Priority Claims and 503(b)(9) Claims, as established by the Bar Date Order.

1.64    **"General Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Miscellaneous Secured Claim, Other Priority Claim, Subordinated 510(b) Claim or Subordinated 510(c) Claim.

1.65    **"Governmental Unit"** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

1.66    **"Holder"** means an Entity holding a Claim against or Interest in the Debtor.

1.67    **"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.68    **"Impaired Class"** means a Class of Claims or Interests that is Impaired.

1.69    **"Indemnification Claims"** means Claims asserted by the Debtor's directors and officers employed by or serving the Debtor as of the Effective Date for advancement or indemnification, whether arising under the Debtor's certificate of incorporation, as amended, by-laws, any contract, any agreement or otherwise.

1.70    **"Indemnification Reserve"** means the reserve of Cash established and maintained by the Debtor or Liquidating Joonko for the benefit of Holders of Allowed Indemnification Claims in an initial amount equal to the Indemnification Reserve Amount.

1.71    **"Indemnification Reserve Amount"** means $2,000,000.

1.72    **"Indemnification Reserve Period"** means the period ending 30 months from the date of the Effective Date

1.73    **"Initial Class 6 Distribution Amount"** means the aggregate amount of Available Cash after the Debtor or Liquidating Joonko, as applicable, has paid all Allowed Administrative Claims, Priority Tax Claims, Miscellaneous Secured Claims, Other Priority Claims and General Unsecured Claims.

1.74    **"Interest Holder"** means the Holder of an Interest.

1.75    **"Interest Holders List"** means the list of the Debtor's equity security holders filed in accordance with Bankruptcy Rule 1007(a)(3).  *See* Docket Nos. 4, 23.

**1.76** **"Interests"** means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person or Entity in the Debtor, including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated stock or a similar security.

**1.77** **"Interests Objection Deadline"** means the last day for filing objections to Interests, which day shall be sixty (60) days after the Effective Date, or such later date as may be ordered by the Court.

**1.78** **"Joonko"** means Joonko Diversity Inc., a Delaware corporation.

**1.79** **"Lien"** has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code.

**1.80** **"Liquidating Joonko"** means the Debtor, or its successor, on and after the Effective Date.

**1.81** **"Local Rules"** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.82** **"Miscellaneous Secured Claim"** means a Claim (a) that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (b) that is subject to setoff under section 553 of the Bankruptcy Code and such right of setoff has been asserted by the holder of such right prior to the Confirmation Date in a properly Filed motion for relief from the automatic stay, to the extent of the value of the Claimholder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.83** **"New Common Stock"** has the meaning ascribed to such term in Article V.A.2 of the Plan.

**1.84** **"Official Bankruptcy Forms"** means the Official Bankruptcy Forms, prescribed by the Judicial Conference of the United States, the observance and use of which is required pursuant to Bankruptcy Rule 9009, as such forms may be amended, revised or supplemented from time to time.

**1.85** **"Old Common Stock"** means the common stock of Joonko outstanding immediately prior to the Petition Date, including treasury stock and all options, warrants, calls,

rights, puts, awards, commitments or any other agreements of any character to acquire such common stock from the Debtor.

**1.86    "Old Preferred Stock"** means the preferred stock of Joonko outstanding immediately prior to the Petition Date, which stock is designated Series Seed 1 Preferred Stock, Series Seed 2 Preferred Stock, Series Seed 3 Preferred Stock, Series A-1 Preferred Stock, Series A-2 Preferred Stock, and Series B Preferred Stock, including treasury stock and all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any character to acquire such preferred stock from the Debtor.

**1.87    "Operating Reserve"** means the reserve of Cash established and maintained by Liquidating Joonko into which Liquidating Joonko shall from time to time deposit Cash to fund, among other things, the expenses of Liquidating Joonko and/or the Plan Administrator.

**1.88    "Ordinary Course Professionals"** means those professionals authorized to be retained and compensated by the Debtor pursuant to the *Order Authorizing the Employment and Payment of Professionals Used in the Ordinary Course of Business* [Docket No. 54].

**1.89    "Original Issue Price"** means, with respect to: (i) Series Seed 1 Preferred Stock, $0.4556 per share; (ii) Series Seed 2 Preferred Stock, $0.2278 per share; (iii) Series Seed 3 Preferred Stock, $0.3417 per share; (iv) Series A-1 Preferred Stock, $0.7352 per share; (v) Series A-2 Preferred Stock, $0.5881 per share; and (vi) Series B Preferred Stock, $1.7459 per share.

**1.90    "Other Interests"** means all Interests in the Debtor that are not Old Preferred Stock or Old Common Stock.

**1.91    "Other Priority Claim"** means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.92    "Periodic Class 6 Distribution Amount"** means, with respect to each Periodic Distribution Date, the aggregate amount of Available Cash.

**1.93    "Periodic Distribution Date"** means (a) the Distribution Date or (b) after the Distribution Date, the first Business Day occurring one hundred eighty (180) days after the immediately preceding Periodic Distribution Date or such other Business Day selected by the Plan Administrator, in its sole and absolute discretion; provided, however, distributions shall be no more often than quarterly.

**1.94    "Person"** has the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.95    "Petition Date"** means May 14, 2024, the date on which the Debtor Filed its petition for relief commencing the Chapter 11 Case.

**1.96    "Plan"** means this chapter 11 plan of liquidation proposed by the Plan Proponent, including all exhibits and schedules attached hereto or otherwise incorporated herein, as such

Plan may be altered, amended, modified or supplemented from time to time, including in accordance with its terms, the Bankruptcy Code and the Bankruptcy Rules.

**1.97** **"Plan Administration Agreement"** means the agreement between Liquidating Joonko and the Plan Administrator specifying the rights, duties and responsibilities of the Plan Administrator under the Plan, substantially in the form attached as <u>Exhibit A</u> hereto.

**1.98** **"Plan Administrator"** means Mr. Ilan Band, or such other Person designated by the Debtor prior to the Confirmation Date and approved by the Court pursuant to the Confirmation Order, and any successors thereto, who is authorized to administer the Plan in accordance with its terms and the Plan Administration Agreement and to take such other actions as may be authorized under the Plan Administration Agreement and/or by the terms of the Plan and the Confirmation Order.

**1.99** **"Plan Professional"** means any professional or expert employed by the Plan Administrator and/or Liquidating Joonko to assist the Plan Administrator and/or Liquidating Joonko in carrying out the provisions of the Plan and the Plan Administration Agreement.

**1.100** **"Plan Proponent"** means the Debtor.

**1.101** **"Plan Supplement"** means the compilation(s) of documents and forms of documents, including any exhibits to the Plan not included herewith, that the Debtor shall File with the Court on or before the Plan Supplement Filing Date.

**1.102** **"Plan Supplement Filing Date"** means the date on which the Plan Supplement shall be Filed with the Court, which date shall be at least seven (7) days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan, unless otherwise ordered by the Court.

**1.103** **"Priority Tax Claim"** means any Claim accorded priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

**1.104** **"Pro Rata"** means, at any time, the proportion that a Holder's Aggregate Original Issue Price of Old Preferred Stock bears to the sum of the Aggregate Original Issue Price of Old Preferred Stock for all Holders of Old Preferred Stock (including Disputed Interests, but excluding Disallowed Interests).

**1.105** **"Professional"** means any professional employed by the Debtor in the Chapter 11 Case pursuant to sections 327, 328, 330 or 363 of the Bankruptcy Code and any professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code, other than Ordinary Course Professionals.

**1.106** **"Professional Fee Bar Date"** means the deadline for Filing all applications for Professional Fee Claims, which shall be forty-five (45) days after the Effective Date, as set forth in Article IX.A.1 of the Plan.

**1.107** **"Professional Fee Claim"** means a Claim of a Professional pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for compensation or reimbursement

of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.108 "Professional Fee Estimate"** means (i) with respect to any Professional, a good-faith estimate of such Professional's anticipated accrued unpaid Professional Fee Claims as of the Effective Date to be provided by each Professional in writing to the Debtor prior to the commencement of the Confirmation Hearing, or in the absence of such a writing, to be prepared by the Debtor, and (ii) collectively, the sum of all individual Professional Fee Estimates.

**1.109 "Professional Fee Order"** means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Docket No. 53].

**1.110 "Professional Fee Reserve"** means the reserve of Cash established and maintained by the Debtor or Liquidating Joonko for the benefit of Holders of Allowed Professional Fee Claims in an amount equal to the Professional Fee Estimate.

**1.111 "Proof of Claim"** means the proof of claim that must be Filed before the applicable Bar Date, which term shall include a request for payment of an administrative expense claim.

**1.112 "Proof of Interest"** means the proof of interest that must be Filed before the applicable Bar Date.

**1.113 "Rejection Bar Date"** means the deadline by which a counterparty to a rejected Executory Contract or Unexpired Lease of the Debtor must File a Proof of Claim for damages resulting from the rejection of such Executory Contract or Unexpired Lease by the Debtor, which deadline shall be the later of: (a) the General Bar Date; (b) thirty (30) days after the entry of an order by the Court authorizing such rejection; or (c) such other date, if any, as the Court may fix in the order authorizing such rejection.

**1.114 "Reserves"** means, collectively, the Administrative Claims Reserve, Disputed Claims Reserve, Disputed Interests Reserve, Indemnification Reserve, Operating Reserve, Professional Fee Reserve and Unclaimed Distribution Reserve and such other reserves as may be deemed necessary by the Plan Administrator pursuant to the Plan Administration Agreement.

**1.115 "Restricted Cash"** means the Cash segregated (whether physically or merely on the books and records of Liquidating Joonko) by Liquidating Joonko to fund the Reserves.

**1.116 "Scheduled"** means, with respect to any Claim, the status and amount, if any, of that Claim as set forth in the Schedules.

**1.117 "Schedules"** mean the schedules of assets and liabilities, schedules of executory contracts and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms, as such schedules and statement have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009 or any orders of the Court.

**1.118** **"Solicitation Procedures Order"** means the *Order (A) Approving Disclosure Statement; (B) Scheduling Hearing on Confirmation of Plan; (C) Establishing Deadlines and Procedures for (I) Filing Objections to Confirmation of Plan, (II) Interest Objections, and (III) Temporary Allowance of Interests for Voting Purposes; (D) Setting Record Date; (E) Approving (I) Solicitation Packages and Procedures for Distribution, (II) Form of Notice of Hearing on Confirmation and Related Matters, and (III) Form of Ballot; (F) Establishing Voting Deadline and Procedures for Tabulation of Votes; and (G) Granting Related Relief* [Docket No. ___].

**1.119** **"Subordinated 510(b) Claim"** means any Claim subordinated pursuant to section 510(b) of the Bankruptcy Code, which shall include any Claim arising from the rescission of a purchase or sale of any Old Common Stock or Old Preferred Stock, any Claim for damages arising from the purchase or sale of any Old Common Stock or Old Preferred Stock, or any Claim for reimbursement, contribution or indemnification on account of any such Claim.

**1.120** **"Subordinated 510(c) Claim"** means any Claim (i) subordinated pursuant to section 510(c) of the Bankruptcy Code; or (ii) for punitive or exemplary damages or for a fine or penalty, to the extent permitted by applicable law.

**1.121** **"Substantial Contribution Claim"** means a Claim under subsections 503(b)(3), (b)(4) or (b)(5) of the Bankruptcy Code for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Case.

**1.122** **"Unclaimed Distribution Reserve"** has the meaning ascribed to such term in Article VI.C.2 of the Plan.

**1.123** **"Unclaimed Distributions"** means any undeliverable or unclaimed Distributions.

**1.124** **"Unexpired Lease(s)"** means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**1.125** **"Unimpaired"** means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.126** **"U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

**1.127** **"Voting Deadline"** means August 30, 2024, at 4:00 p.m. (Eastern Time), the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.

## C.    Rules of Interpretation

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified or

supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan, (d) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**D.    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**E.    Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan and (ii) the state of incorporation of the Debtor shall govern corporate governance matters with respect to the Debtor and Liquidating Joonko, in either case without giving effect to the principles of conflicts of law thereof.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

**A.    Introduction**

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and, in the case of a Claim, such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**B.    Unclassified Claims**

    **1.    Administrative Claims**

    **2.    Priority Tax Claims**

**C.    Unimpaired Classes of Claims**

    **1.    Class 1:  Miscellaneous Secured Claims**

        Class 1 consists of all Miscellaneous Secured Claims.  Each Holder of an Allowed Miscellaneous Secured Claim shall be placed in a separate subclass, and each subclass shall be treated as a separate Class for Distribution purposes.

    **2.    Class 2:  Other Priority Claims**

        Class 2 consists of all Other Priority Claims.

    **3.    Class 3:  General Unsecured Claims**

        Class 3 consists of all General Unsecured Claims.

**D.    Impaired Classes of Claims**

    **1.    Class 4:  Subordinated 510(b) Claims**

        Class 4 consists of all Subordinated 510(b) Claims.

    **2.    Class 5:  Subordinated 510(c) Claims**

        Class 5 consists of all Subordinated 510(c) Claims.

**E.    Impaired Class of Interests**

    **1.    Class 6:  Old Preferred Stock**

        Class 6 consists of all Old Preferred Stock.

    **2.    Class 7:  Old Common Stock**

        Class 7 consists of all Old Common Stock.

    **3.    Class 8:  Other Interests**

        Class 8 consists of all Other Interests.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**A.    Unclassified Claims**

    **1.    Administrative Claims**

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim (other than a Professional) shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which such Holder and the Debtor or Liquidating Joonko, as applicable, shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (x) on or prior to the Effective Date, by the Debtor, and (y) after the Effective Date, by the Disbursing Agent.  Allowed Professional Fee Claims shall be paid from the Professional Fee Reserve pursuant to Article V.E.1 of the Plan.

    **2.    Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, a Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for of such Allowed Priority Tax Claim, (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (b) such other treatment as to which such Holder and the Debtor or Liquidating Joonko, as applicable, shall have agreed upon in writing.

**B.    Unimpaired Claims**

    **1.    Class 1:  Miscellaneous Secured Claims**

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Debtor or Liquidating Joonko, as applicable, a Holder of an Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Miscellaneous Secured Claim, (a) Cash equal to the value of such Allowed Miscellaneous Secured Claim, (b) a return of the Holder's Collateral securing the Miscellaneous Secured Claim, (c) such treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be rendered Unimpaired or (d) such other treatment as to which such Holder and the Debtor or Liquidating Joonko, as applicable, shall have agreed upon in writing.

Any Holder of a Miscellaneous Secured Claim shall retain its Lien in the Collateral or the proceeds of the Collateral (to the extent that such Collateral is sold by the Debtor or Liquidating Joonko free and clear of such Lien) to the same extent and with the same priority as such Lien

held as of Petition Date until such time as (A) the Holder of such Miscellaneous Secured Claim (i) has been paid Cash equal to the value of its Allowed Miscellaneous Secured Claim, (ii) has received a return of the Collateral securing the Miscellaneous Secured Claim or (iii) has been afforded such other treatment as to which such Holder and the Debtor or Liquidating Joonko, as applicable, shall have agreed upon in writing; or (B) such purported Lien has been determined by an order of the Court to be invalid or otherwise avoidable.

### 2.  Class 2:  Other Priority Claim

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such Other Priority Claim becomes an Allowed Other Priority Claim, a Holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for of such Allowed Other Priority Claim, (a) Cash equal to the unpaid portion of such Allowed Other Priority Claim or (b) such other treatment as to which such Holder and the Debtor or Liquidating Joonko, as applicable, shall have agreed upon in writing.

### 3.  Class 3:  General Unsecured Claims

On or as soon as reasonably practicable after the later of (i) the Distribution Date or (ii) the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, a Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for of such Allowed General Unsecured Claim, (a) Cash equal to the unpaid portion of such Allowed General Unsecured Claim or (b) such other treatment as to which such Holder and the Debtor or Liquidating Joonko, as applicable, shall have agreed upon in writing.

## C.  Impaired Claims

### 1.  Class 4:  Subordinated 510(b) Claims

On the Effective Date, all Subordinated 510(b) Claims shall be eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan on account of such Claims.

### 2.  Class 5:  Subordinated 510(c) Claims

On the Effective Date, all Subordinated 510(c) Claims shall be eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property under the Plan on account of such Claims.

## D.  Interests

### 1.  Class 6:  Old Preferred Stock

On or as soon as reasonably practicable after the Distribution Date, each Holder of Allowed Class 6 Interests shall receive, on account of such Interests, its Pro Rata share of the Initial Class 6 Distribution Amount.  On each Periodic Distribution Date, each Holder of Allowed Class 6 Interests shall receive, on account of such Interests, (i) its Pro Rata share of the

Periodic Class 6 Distribution Amount plus (ii) any Cash from the Disputed Interests Reserve that would have been distributed to such Holder on the dates Distributions previously were made to Interest Holders had such Allowed Interests been Allowed Interests on such dates.

### 2.   Class 7:  Old Common Stock

On the Effective Date, all Old Common Stock shall be eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Old Common Stock.

### 3.   Class 8:  Other Interests

On the Effective Date, all Other Interests shall be eliminated, cancelled and/or extinguished and each Holder thereof shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Other Interests.

### E.   Special Provision Regarding Unimpaired Claims

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of Liquidating Joonko with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

### F.   Allowed Claims and Interests

Notwithstanding any provision herein to the contrary, the Disbursing Agent shall only make Distributions to Holders of Allowed Claims and Allowed Interests.  No Holder of a Disputed Claim or Disputed Interest shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.  Liquidating Joonko may, in its discretion, withhold Distributions otherwise due hereunder to any Claimholder or Interest Holder until the Claims Objection Deadline or Interests Objection Deadline, as applicable, to enable a timely objection thereto to be Filed.  Any Holder of a Claim or Interest that becomes an Allowed Claim or Allowed Interest after the Effective Date shall receive its Distribution in accordance with the terms and provisions of the Plan.

### ARTICLE IV

### ACCEPTANCE OR REJECTION OF THE PLAN

### A.   Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

In accordance with section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in amount of the Allowed Interests of such Class that have timely and properly voted to accept or reject the Plan.

**B.      Presumed Acceptances by Unimpaired Classes**

Classes 1, 2 and 3 are Unimpaired by the Plan.  Under section 1126(f) of the Bankruptcy Code, such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders shall not be solicited.

**C.      Classes Deemed to Reject Plan**

Holders of Claims in Classes 4 and 5 and Interest Holders in Classes 7 and 8 are not entitled to receive or retain any property under the Plan.  Under section 1126(g) of the Bankruptcy Code, such Claim and Interest Holders are deemed to reject the Plan, and the votes of such Claimholders and Interest Holders shall not be solicited.

**D.      Impaired Class of Interests Entitled to Vote**

Because Interests in Class 6 are Impaired under the Plan and Holders of such Interests shall receive or retain property under the Plan, Holders of Interests in Class 6 are entitled to vote and shall be solicited with respect to the Plan.

**E.      Vacant Classes**

Any Class or sub-Class of Claims or Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by at least one Allowed Claim or Allowed Interest, as applicable, or at least one Claim or Interest, as applicable, temporarily Allowed under Bankruptcy Rule 3018, shall not be included for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**F.      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

Because Classes 4, 5, 7 and 8 are deemed to reject the Plan, the Debtor shall (i) seek confirmation of the Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code and/or (ii) modify the Plan in accordance with Article XII.A hereof.  The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Exhibit or schedule, including to amend or modify the Plan or such exhibits or schedules to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**     **Corporate Action**

**1.**     **Cancellation of Existing Securities and Agreements**

Except as otherwise provided in the Plan, and in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, any promissory notes, share certificates, whether for preferred or common stock (including treasury stock), other instruments evidencing any Claims or Interests, other than a Claim that is being reinstated and rendered unimpaired, and all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any character to acquire such Interests shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtor under the notes, share certificates and other agreements and instruments governing such Claims and Interests shall be discharged.  The holders of or parties to such canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

**2.**     **Continued Corporate Existence**

Joonko shall continue to exist as Liquidating Joonko after the Effective Date in accordance with the laws of the State of Delaware and pursuant to the certificate of incorporation and by-laws in effect prior to the Effective Date, as amended by the Second Amended and Restated Certificate of Incorporation of Joonko Diversity Inc. and the Amended and Restated By-laws of Joonko Diversity Inc., attached to the Plan as Exhibits B and C, respectively. Liquidating Joonko shall continue to exist for the limited purposes of distributing all of the assets of the Debtor's Estate, to the extent necessary, and complying with and fulfilling its obligations under the Plan Administration Agreement and the Plan.  The certificate of incorporation, by-laws or other organizational documents of the Debtor shall be amended as necessary, as permitted by section 303 of Title 8 of the Annotated Code of Delaware (as amended, the "**Delaware General Corporation Law**"), to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code.

On the Effective Date, Liquidating Joonko shall issue one share of common stock (the "**New Common Stock**") to the Plan Administrator, who shall serve as the sole shareholder of Liquidating Joonko.  The Plan Administrator shall not sell, transfer or otherwise dispose of the New Common Stock absent approval by the Court.  The Plan Administrator may vote the New Common Stock on any matter requiring a vote of shareholders of Liquidating Joonko under the Delaware General Corporation Law.

### 3.    Post-Effective Date Corporate Governance

On the Effective Date, the members of the board of directors of the Debtor shall be deemed to have resigned.  Upon the resignation of the board of directors of the Debtor, the Plan Administrator shall serve as the sole officer and sole director of Liquidating Joonko.  The Plan Administrator shall be subject to the terms and conditions of the Plan Administration Agreement and responsible for the daily operations of Liquidating Joonko.

Moreover, on and after the Effective Date, Liquidating Joonko (i) shall be deemed to have withdrawn its business operations from any state in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal; and (ii) shall not be liable in any manner to any taxing or other authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

Further, after the Effective Date, the Plan Administrator may, in the name of Liquidating Joonko, take actions as may be necessary or appropriate to accomplish the purposes of Liquidating Joonko, without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, except as provided in the Plan Administration Agreement, the Plan or the Confirmation Order.

### 4.    No Further Action

Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person or Entity, including but not limited to, the Plan Administrator, Holders of Claims or Interests against or in the Debtor, or directors or officers of the Debtor.

### 5.    Effectuating Documents; Further Transactions

The Plan Administrator, subject to the terms and conditions of the Plan and the Plan Administration Agreement, shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Plan Administrator shall be authorized to certify or attest to any of the foregoing actions.

### 6.    Dissolution of Liquidating Joonko

As soon as practicable after the Plan Administrator makes the final distribution of Cash under the Plan and the Plan Administration Agreement and has complied with and fulfilled its obligations under the Plan, the Plan Administration Agreement and the Confirmation Order, the Plan Administrator shall, at Liquidating Joonko's expense, (a) provide for the retention and storage of the books and records and files that shall have been delivered to or created by the Plan Administrator until the second (2nd) anniversary of the dissolution of Liquidating Joonko, and file a certificate informing the Court of the location at which such books, records and files are being stored; (b) file a certification stating that Liquidating Joonko's assets have been exhausted

and final distributions of Cash have been made under the Plan; (c) file the necessary paperwork to effectuate the dissolution of Liquidating Joonko in accordance with the laws of the State of Delaware; and (d) resign as the sole officer and sole director of Liquidating Joonko (collectively, the "**Dissolution Requirements**").  Upon the Filing of the certificate described in section (b) of the preceding sentence, Liquidating Joonko shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of Liquidating Joonko or payments to be made in connection therewith.

## B.    Legal Representation and Privilege Matters

### 1.    Legal Representation of the Debtor After the Effective Date

Upon the Effective Date, the attorney-client relationship between the Debtor and its current counsel, McDermott Will & Emery LLP, shall be deemed terminated.  No successor to the Debtor, whether under the Plan or otherwise, including but not limited to Liquidating Joonko or the Plan Administrator shall be deemed to succeed to the attorney-client relationship that currently exists between the Debtor and its counsel.  Subject only to the applicable ethical rules governing attorneys, their receipt of confidential information and their relationship with former clients, current counsel for the Debtor shall not be precluded from representing any party in any action that might be brought by or against Liquidating Joonko and/or the Plan Administrator.

### 2.    Transfer of Evidentiary Privileges; Document Requests

Upon the Effective Date, Liquidating Joonko shall succeed to the evidentiary privileges, including attorney-client privilege, formerly held by the Debtor.  Accordingly, to the extent that documents are requested from current counsel to the Debtor by any Person or Entity after the Effective Date, only Liquidating Joonko shall have the ability to waive such attorney-client or other privileges.  In addition, current counsel to the Debtor shall have no obligation to produce any documents currently in its possession as a result of or arising in any way out of its representation of the Debtor unless (i) the Person or Entity requesting such documents serves its request on Liquidating Joonko; (ii) Liquidating Joonko consents in writing to such production and any waiver of the attorney-client or other privilege such production might cause; and (iii) Liquidating Joonko, or the Person or Entity requesting such production, agrees to pay the reasonable costs and expenses incurred by current counsel for the Debtor in connection with such production.

Unless the Court orders otherwise, upon the second (2nd) anniversary of the termination of the Plan Administration Agreement and the dissolution of Liquidating Joonko, any and all documents in the possession of the Debtor's current counsel as a result of or arising in any way out of its representation of the Debtor, shall be deemed destroyed and no Person or Entity shall be entitled to obtain such documents.

## C.    The Plan Administrator

### 1.    Appointment of the Plan Administrator

The Debtor shall designate Mr. Ilan Band, or such other Person approved by the Court pursuant to the Confirmation Order, to serve as the Plan Administrator pursuant to the Plan

Administration Agreement and the Plan, until the resignation or discharge and the appointment of a successor Plan Administrator in accordance with the Plan Administration Agreement.  Upon the Effective Date, the Plan Administrator shall serve as the sole shareholder, officer and director of Liquidating Joonko in accordance with the terms of the Plan Administration Agreement.  The Plan Administrator shall retain all rights and powers conferred by the Plan and the Plan Administration Agreement.

### 2.      Compensation of the Plan Administrator

The Plan Administrator shall be compensated from the Operating Reserve pursuant to the terms of the Plan Administration Agreement.  Any Plan Professionals retained by the Plan Administrator shall be entitled to reasonable compensation from the Operating Reserve for services rendered and reimbursement of reasonable expenses incurred.  The payment of the fees and expenses of the Plan Administrator and the Plan Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Court.

### 3.      Indemnification of the Plan Administrator

Liquidating Joonko shall indemnify and hold harmless the Plan Administrator (in its capacity as such and as an officer and a director of Liquidating Joonko) and the Plan Professionals, as set forth in the Plan Administration Agreement.

### 4.      Insurance for the Plan Administrator

The Plan Administrator shall be authorized to obtain all insurance coverage that is reasonably necessary for the Plan Administrator, the Plan Professionals, Liquidating Joonko and the officers and directors of Liquidating Joonko, as set forth in the Plan Administration Agreement.

### 5.      Authority to Object to Claims and Interests and to Settle Disputed Claims

Prior to the Effective Date, the Debtor shall be responsible for the reconciliation, allowance or payment of all Claims.  From and after the Effective Date, Liquidating Joonko shall be authorized, with respect to those Claims or Interests which are not Allowed hereunder or by Court order, (i) to object to any Claims or Interests Filed against the Debtor's Estate and (ii) to compromise and settle Disputed Claims and Disputed Interests after the Effective Date.

## D.      Vesting of Assets in Liquidating Joonko

The property of the Debtor's Estate shall be vested in Liquidating Joonko on and following the Effective Date and continue to be subject to the jurisdiction of the Court following confirmation of the Plan until such property is distributed to holders of Allowed Claims and Allowed Interests in accordance with the provisions of the Plan and the Confirmation Order.

**E.     Accounts and Reserves**

The Debtor or Liquidating Joonko, as applicable, shall (a) establish one or more general accounts into which shall be deposited all funds not required to be deposited into any other account or Reserve; and (b) create, fund and withdraw funds from, as appropriate, the Administrative Claims Reserve, Disputed Claims Reserve, Disputed Interests Reserve, Indemnification Reserve, Operating Reserve, Professional Fee Reserve and Unclaimed Distribution Reserve and such other accounts and Reserves maintained or established by Liquidating Joonko.

**1.     Professional Fee Reserve**

On or before the Effective Date, the Debtor shall fund the Professional Fee Reserve in the amount of the aggregate Professional Fee Estimate.  The Debtor and/or Liquidating Joonko (i) shall segregate and shall not commingle the Cash held in the Professional Fee Reserve and (ii) subject to the terms and conditions of the Plan, shall pay each Allowed Professional Fee Claim from the Professional Fee Reserve upon entry of a Final Order allowing such Claim.  The Debtor and/or Liquidating Joonko shall not be permitted to distribute any of the Professional Fee Reserve to any Person or Entity other than a Professional entitled to payment from the Professional Fee Reserve (and then such payment shall only be permitted in accordance with the terms of the Plan).  In the event that Cash remains in the Professional Fee Reserve after all Allowed Professional Fee Claims have been paid in full and all other Professional Fee Claims have been disallowed or otherwise resolved, such Cash shall become Available Cash and shall be distributed in accordance with the terms of the Plan.  Nothing herein, including the establishment of the Professional Fee Reserve, is intended to or shall be deemed in any way to alter the priority of Professional Fee Claims afforded by the Bankruptcy Code, and payments to Holders of Allowed Professional Fee Claims shall not be limited to the Cash held in the Professional Fee Reserve.

**2.     Administrative Claims Reserve**

On or before the Effective Date, the Debtor shall fund the Administrative Claims Reserve in the amount of the Administrative and Priority Claims Estimate.  The Debtor and/or Liquidating Joonko (i) shall segregate and shall not commingle the Cash held in the Administrative Claims Reserve and (ii) subject to the terms and conditions of the Plan, shall pay each Allowed Administrative Claim (except Professional Fee Claims, which shall be paid from the Professional Fee Reserve), Allowed Priority Tax Claim and Allowed Other Priority Claim, upon such Claim becoming an Allowed Claim.  The Debtor and/or Liquidating Joonko shall not be permitted to distribute any of the Administrative Claims Reserve to any Person or Entity other than a Person or Entity entitled to payment from the Administrative Claims Reserve (and then such payment shall only be permitted in accordance with the terms of the Plan).  In the event that Cash remains in the Administrative Claims Reserve after all Allowed Administrative Claims (except Professional Fee Claims), Allowed Priority Tax Claims and Allowed Other Priority Claims have been paid in full and all other Administrative Claims (except Professional Fee Claims), Priority Tax Claims and Other Priority Claims have been disallowed or otherwise resolved, such Cash shall become Available Cash and shall be distributed in accordance with the terms of the Plan.  Nothing herein, including the establishment of the Administrative Claims

Reserve, is intended to or shall be deemed in any way to alter the priority of Administrative Claims, Priority Tax Claims and Other Priority Claims afforded by the Bankruptcy Code, and payments to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims shall not be limited to the Cash held in the Administrative Claims Reserve.

### 3.    Indemnification Reserve

On or before the Effective Date, the Debtor shall fund the Indemnification Reserve in the amount of the Indemnification Reserve Amount.  The Debtor and/or Liquidating Joonko (i) shall segregate and shall not commingle the Cash held in the Indemnification Reserve and (ii) subject to the terms and conditions of the Plan, shall pay each Allowed Indemnification Claim from the Indemnification Reserve upon such Claim becoming an Allowed Claim.  The Debtor and/or Liquidating Joonko shall not be permitted to distribute any of the Indemnification Reserve to any Person other than a Person entitled to payment from the Indemnification Reserve (and then such payment shall only be permitted in accordance with the terms of the Plan).  In the event that Cash remains in the Indemnification Reserve after the earlier of (i) the expiration of the Indemnification Reserve Period or (ii) the payment in full of all Allowed Indemnification Claims and the disallowance or other resolution of all other Indemnification Claims, such Cash shall become Available Cash and shall be distributed in accordance with the terms of the Plan.  Nothing herein, including the establishment of the Indemnification Reserve, is intended to or shall be deemed in any way to alter the priority of Indemnification Claims afforded by the Bankruptcy Code, and payments to Holders of Allowed Indemnification Claims shall not be limited to the Cash held in the Indemnification Reserve.

### 4.    Operating Reserve

On the Effective Date or as soon thereafter as practicable, Liquidating Joonko shall fund the Operating Reserve by reserving that amount of Liquidating Joonko's Cash necessary to meet Liquidating Joonko's obligations and to fund the expenses of the Plan Administrator and Liquidating Joonko.  Such amounts should be sufficient to, among other things, (i) fund the expenses of the Plan Administrator and the Plan Professionals and others retained to perform services on behalf of the Plan Administrator and Liquidating Joonko until the dissolution of Liquidating Joonko and (ii) provide for payment of other administrative claims that may arise on or subsequent to the Effective Date.

### 5.    Other Reserves

Further detail regarding the Disputed Claims Reserve, Disputed Interests Reserve and Unclaimed Distribution Reserve is set forth in Articles VI.H.3, VI.H.4 and VI.C.2 of the Plan, respectively.

## F.    Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of

any such tax or governmental assessment and to accept for filing and recordation instruments or other documents without the payment of any such tax or governmental assessment.

## G.    Applicability of Section 1145 of the Bankruptcy Code

Liquidating Joonko and/or the Plan Administrator shall be deemed to be "successors" to the Debtor for the limited purpose (with respect to the Plan Administrator only) of the provisions of section 1145 of the Bankruptcy Code with respect to the New Common Stock, but not for any other purpose or in any other context unless explicitly set forth in the Plan, and the distribution of New Common Stock under the terms of the Plan shall constitute the offer or sale under a plan of the Debtor of a security of a successor to the Debtor under such plan in exchange for a claim against, an interest in, or a claim for an administrative expense in the Chapter 11 Case, such that pursuant to section 1145(a)(1) of the Bankruptcy Code, the issuance of the New Common Stock, to the extent the New Common Stock constitutes "securities" under applicable law, shall be exempt from requirements of section 5 of the Securities Act of 1933, as amended, and any other federal, state or local laws requiring registration for offer or sale of securities.

Solely for the limited purpose of the provisions of section 1125(e) of the Bankruptcy Code, the Plan Administrator and Liquidating Joonko shall be deemed to have participated, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, of a newly organized successor to the Debtor under the Plan, and therefore, pursuant to section 1125(e) of the Bankruptcy Code, are not liable for violation of any applicable law, rule or regulation governing the offer, issuance, sale or purchase of securities.

## H.    Preservation of Causes of Action; Settlement of Causes of Action

### 1.    Preservation of Causes of Action

In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan or the Confirmation Order, Liquidating Joonko shall retain all of the Causes of Action, a nonexclusive list of which is set forth on <u>Exhibit E</u> hereto, and other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other causes of action of a trustee and debtor in possession under the Bankruptcy Code. Liquidating Joonko may, in accordance with the Plan Administration Agreement, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action.

No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator and/or Liquidating Joonko shall not pursue any and all available Causes of Action against them. The Plan Administrator and Liquidating Joonko expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Court order, the Plan Administrator and Liquidating Joonko expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of

*res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or Consummation of the Plan.

## 2.    Settlement of Causes of Action

At any time after the Confirmation Date but before the Effective Date, notwithstanding anything in the Plan to the contrary, the Debtor may settle some or all of the Causes of Action with the approval of the Court pursuant to Bankruptcy Rule 9019.  After the Effective Date, Liquidating Joonko and/or the Plan Administrator, in accordance with the terms of the Plan and the Plan Administration Agreement, shall determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing), and may take such actions without any further notice to or action, order or approval by the Court.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions on Allowed Claims

Distributions to be made on account of Claims and Interests that are Allowed Claims and Allowed Interests as of the Effective Date shall be made on the Distribution Date by the Disbursing Agent.  Distributions on account of Claims and Interests that first become Allowed Claims and Allowed Interests after the Effective Date shall be made pursuant to the terms and conditions of the Plan.  Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or Allowed Interest or portion thereof that (i) has been satisfied after the Petition Date; (ii) is listed in the Schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely Filed; or (iii) is evidenced by a Proof of Claim or Proof of Interest that has been amended by a subsequently Filed Proof of Claim or Proof of Interest, as applicable.

## B.    Disbursing Agent

The Disbursing Agent shall make all Distributions required under the Plan, subject to the terms and provisions of the Plan and the Plan Administration Agreement.  If the Disbursing Agent is an independent third party designated to serve in such capacity, such Disbursing Agent shall receive, without further Court approval, reasonable compensation approved by the Plan Administrator for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties.  The Disbursing Agent shall be authorized and directed to rely upon the Debtor's books and records and the Plan Administrator's or Liquidating Joonko's representatives (as applicable) and professionals in determining Allowed Claims and Allowed Interests entitled to Distributions under the Plan in accordance with the terms and conditions of the Plan.

**C.     Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.     Delivery of Distributions in General**

Distributions to Holders of Allowed Claims and Allowed Interests shall be made by the Disbursing Agent (a) at the addresses set forth on the Proofs of Claim and Proofs of Interest Filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim or Proof of Interest is Filed and the Debtor has not been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest, after sufficient evidence of such addresses as may be requested by the Disbursing Agent is provided, (c) at the addresses reflected in the Schedules or Interest Holders List if no Proof of Claim or Proof of Interest has been Filed and the Disbursing Agent has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtor or the Disbursing Agent at the time of the Distribution if no Proof of Claim or Proof of Interest has been Filed and the Disbursing Agent has not received a written notice of a change of address or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.

Distributions shall be made from Available Cash and the Reserves, as applicable, in accordance with the terms of the Plan and the Plan Administration Agreement.  To the extent that Cash remains in any of the Reserves after payment of all Allowed Claims and/or Allowed Interests entitled to payment from such Reserve, such Cash shall become Available Cash and shall be distributed in accordance with the terms of the Plan.

In making Distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the Claims register maintained by the Claims Agent in the Chapter 11 Case, as modified by any Final Order of the Court disallowing Claims in whole or in part.

**2.     Undeliverable and Unclaimed Distributions**

If the Distribution to any Holder of an Allowed Claim or Allowed Interest is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address and such Holder provides sufficient evidence of such address as may be requested by the Disbursing Agent, at which time all missed Distributions shall be made to such Holder without interest, subject to the time limitations set forth below.  Liquidating Joonko shall segregate (whether physically or merely on the books and records of Liquidating Joonko) and, with respect to Cash, deposit in a segregated account designated as an unclaimed Distribution reserve (the "**Unclaimed Distribution Reserve**") undeliverable and Unclaimed Distributions for the benefit of all such similarly-situated Persons and Entities until such time as a Distribution becomes deliverable or is claimed, subject to the time limitations set forth below.

Any Holder of an Allowed Claim or Allowed Interest that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed Distribution within three (3) months after the date such Distribution was returned as undeliverable shall be deemed to have forfeited its entitlement to such undeliverable or unclaimed Distribution and shall be forever barred and

enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against the Debtor and its Estate, Liquidating Joonko, the Plan Administrator and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its or their property.  In such cases, any Cash otherwise reserved for undeliverable or Unclaimed Distributions shall become Available Cash, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary, and shall be transferred to the appropriate account or reserve pursuant to the terms of the Plan Administration Agreement.  Nothing contained in the Plan or the Plan Administration Agreement shall require the Debtor, Liquidating Joonko, the Plan Administrator or any Disbursing Agent to attempt to locate any holder of an Allowed Claim or Allowed Interest.

**D.      Means of Cash Payment**

Cash payments made pursuant to the Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of the Disbursing Agent by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Disbursing Agent.  In the case of foreign creditors, Cash payments may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction.

**E.      Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on account of any Claims or Interests, and no Claimholder or Interest Holder shall be entitled to interest accruing on or after the Petition Date.  Interest shall not accrue or be paid upon any Disputed Claim or Disputed Interest in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

**F.      Withholding and Reporting Requirements**

In accordance with section 346 of the Bankruptcy Code and in connection with the Plan and all Distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority.  The Disbursing Agent shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

All Distributions hereunder shall be subject to withholding and reporting requirements.  As a condition of making any Distribution under the Plan, the Disbursing Agent may require the Holder of an Allowed Claim or Allowed Interest to provide such Holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws.  The Disbursing Agent shall be entitled in its sole discretion to withhold any Distributions to a Holder of an Allowed Claim or Allowed Interest who fails to provide such requested information within the timeframe requested in writing by the Disbursing Agent to such Holder, which timeframe shall not be less than 30 days.  The Distribution to any Holder of an Allowed Claim or Allowed Interest that fails to timely respond

to the Disbursing Agent shall be treated as an undeliverable or unclaimed Distribution pursuant to Article VI.C.2 of the Plan.

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

### G.    Setoffs

The Debtor and/or Liquidating Joonko may, but shall not be required to, set off against any Claim and the payments or other Distributions to be made under the Plan on account of the Claim, claims of any nature whatsoever that the Debtor and/or Liquidating Joonko may have against the Holder thereof, provided that any such right of setoff that is exercised shall be allocated, first, to the principal amount of the related Claim, and thereafter to any interest portion thereof, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor and/or Liquidating Joonko of any such claim that the Debtor and/or Liquidating Joonko may have against such Holder.

### H.    Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims and Disputed Interests

#### 1.    Objection Deadline; Prosecution of Objections

Except as set forth in the Plan with respect to Professional Fee Claims and Administrative Claims, all objections to Claims must be Filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Court.  If an objection has not been Filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Court, the Claim to which the Proof of Claim or Scheduled Claim relates shall be treated as an Allowed Claim if such Claim has not been Allowed earlier.

All objections to Interests must be Filed and served on the Holders of such Interests by the Interests Objection Deadline, as the same may be extended by the Court.  If an objection has not been Filed to a Proof of Interest by the Interests Objection Deadline, as the same may be extended by order of the Court, the Interest to which the Proof of Interest relates shall be treated as an Allowed Interest if such Interest has not been Allowed earlier.

Notice of any motion for an order extending the Claims Objection Deadline or Interests Objection Deadline shall be required to be given only to those Persons or Entities that have requested notice in the Chapter 11 Case in accordance with Bankruptcy Rule 2002.

On and after the Effective Date, Liquidating Joonko shall have the authority to: (1) File, withdraw or litigate to judgment objections to Claims and Interests and requests for estimation of Claims; (2) settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order or approval by the Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Court; provided, however, that the objection to and settlement of

Professional Fee Claims shall not be subject to this Article VI.H, but rather shall be governed by Article IX.A of the Plan.

### 2.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim or Disputed Interest, or some portion thereof, has become an Allowed Claim or Allowed Interest.  To the extent that a Claim or Interest is not a Disputed Claim or Disputed Interest but is held by a Holder that is or may be liable to Liquidating Joonko on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim or Interest unless and until such Claim or Interest and liability have been settled or withdrawn or have been determined by Final Order of the Court or such other court having jurisdiction over the matter.

### 3.    Disputed Claims Reserve

On the Distribution Date and on each subsequent Periodic Distribution Date, the Disbursing Agent shall withhold from amounts or property that would otherwise be distributed to Classes of Claims entitled to Distributions under the Plan on such date, in a separate Disputed Claims Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions to which Holders of such Disputed Claims would be entitled under the Plan if such Disputed Claims were allowed in their Disputed Claim Amount.  Liquidating Joonko may request, if necessary, estimation for any Disputed Claim that is contingent or unliquidated, or for which Liquidating Joonko determines to reserve less than the face amount of such Claim.  If Liquidating Joonko elects not to request such an estimation from the Court with respect to a Disputed Claim that is contingent or unliquidated, the Disbursing Agent shall withhold the applicable Disputed Claims Reserve based upon the good faith estimate of the amount of such Claim by Liquidating Joonko.

If practicable, the Disbursing Agent shall invest any Cash that is withheld as the Disputed Claims Reserve in an appropriate manner to ensure the safety of the investment.  Nothing in the Plan or the Confirmation Order shall be deemed to entitle the Holder of a Disputed Claim to postpetition interest on such Claim, however.

### 4.    Disputed Interests Reserve

On the Distribution Date and on each subsequent Periodic Distribution Date, the Disbursing Agent shall withhold on a Pro Rata basis from amounts or property that would otherwise be distributed to Holders of Old Preferred Stock entitled to Distributions under the Plan on such date, in a separate Disputed Interests Reserve, such amounts or property as may be necessary to equal one hundred percent (100%) of Distributions to which Holders of such Disputed Interests would be entitled under the Plan if such Disputed Interests were allowed in their Disputed Interest Amount.

If practicable, the Disbursing Agent shall invest any Cash that is withheld as the Disputed Interests Reserve in an appropriate manner to ensure the safety of the investment.  Nothing in the

Plan or the Confirmation Order shall be deemed to entitle the Holder of a Disputed Interest to postpetition interest on such Interest, however.

5.      **Distributions After Allowance**

Payments and Distributions from the Disputed Claims Reserve to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of the Plan that govern Distributions to such Claimholders.  On or as soon as reasonably practicable after the date such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Claimholder any Cash from the Disputed Claims Reserve that would have been distributed on the dates Distributions previously were made to Claimholders had such Allowed Claim been an Allowed Claim on such dates. After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining Cash held in the Disputed Claims Reserve shall constitute Available Cash that shall be transferred to the appropriate account or reserve pursuant to the terms of the Plan Administration Agreement.

Payments and Distributions from the Disputed Interests Reserve to each respective Interest Holder on account of a Disputed Interest, to the extent that it ultimately becomes an Allowed Interest, shall be made in accordance with provisions of the Plan that govern Distributions to such Interest Holders.  On the first Periodic Distribution Date following the date when a Disputed Interest becomes an Allowed Interest, the Disbursing Agent shall distribute to the Interest Holder any Cash from the Disputed Interests Reserve that would have been distributed on the dates Distributions previously were made to Interest Holders had such Allowed Interest been an Allowed Interest on such dates.  After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Interests, any remaining Cash held in the Disputed Interests Reserve shall constitute Available Cash that shall be transferred to the appropriate account or reserve pursuant to the terms of the Plan Administration Agreement.

6.      **De Minimis Distributions**

The Disbursing Agent shall not have any obligation to make a Distribution on account of an Allowed Claim or Allowed Interest if (a) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question (other than the final Periodic Distribution Date) is or has a value less than $100,000, or (b) if the amount to be distributed to the specific Holder of an Allowed Claim or Allowed Interest on the particular Periodic Distribution Date has a value less than $25.00.

7.      **Fractional Dollars**

Any other provision of the Plan notwithstanding, the Disbursing Agent shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### 8.     Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### 9.     Distribution Record Date

The Disbursing Agent shall have no obligation to recognize the transfer of or sale of any Claim or Interest that occurs after the close of business on the Distribution Record Date.  Instead, the Disbursing Agent shall be entitled to recognize and deal for all purposes under the Plan with only those record Claimholders stated on the official Claims register and those Interest Holders reflected in the Debtor's books and records as of the close of business on the Distribution Record Date.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Rejected Contracts and Leases

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, each of the Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed automatically rejected by the Debtor as of the Effective Date, unless such contract or lease (i) previously has been assumed or rejected by the Debtor, (ii) expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date or (iv) is identified on Exhibit D hereto as a Contract to be assumed; provided, however, that nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that the Debtor or its successors and assigns has any liability thereunder; and, provided further, that the Debtor reserves its right, at any time before the Confirmation Date, to assume any Executory Contract or Unexpired Lease that was not already rejected prior to the Confirmation Date.  The Confirmation Order shall constitute an order of the Court approving the rejections described in this Article VII.A, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

### B.     Rejection Damages Bar Date

If the rejection of an Executory Contract or Unexpired Lease pursuant to Article VII.A above gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor or its Estate, Liquidating Joonko, the Plan Administrator or their respective successors or properties unless a Proof of Claim is Filed with the Claims Agent and served on counsel for Liquidating Joonko within thirty (30) days after service of the earlier of (a) notice of the Effective Date or (b) other notice that the Executory Contract or Unexpired Lease has been rejected.

# ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**A.     Conditions to Confirmation**

The following are conditions precedent to confirmation of the Plan, each of which must be satisfied:

1.     The Court shall have entered an order approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

2.     The proposed Confirmation Order shall be in form and substance acceptable to the Debtor.

**B.     Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article VIII.C of the Plan:

1.     The Confirmation Order shall have been entered on the docket in the Chapter 11 Case and shall be in form and substance acceptable to the Debtor.

2.     The Confirmation Order shall have become a Final Order.

3.     The Confirmation Order shall:

(a)     provide that the Debtor, Liquidating Joonko and the Plan Administrator, subject to the terms and conditions of the Plan Administration Agreement, are authorized and directed to (i) take all actions and (ii) enter into, implement and consummate all contracts, instruments, releases, agreements or other documents, in each case as necessary or appropriate to implement the Plan or effectuate, achieve or further the purposes thereof; and

(b)     provide that the discharge, releases, exculpations, indemnifications and injunctions described in Article X hereof are approved.

4.     All Plan Exhibits shall be in form and substance acceptable to the Debtor, and the Plan Administration Agreement shall have been executed or deemed to be executed and delivered.

5.     The Professional Fee Reserve, the Administrative Claims Reserve and the Indemnification Reserve shall have been funded in full in Cash.

6.     All actions, documents and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be satisfactory to the Debtor, and such actions, documents and agreements shall have been effected or executed.

## C.      Waiver of Conditions

Each of the conditions to the Effective Date set forth in Article VIII.B of the Plan may be waived in whole or in part by the Debtor without any other notice to parties in interest or the Court.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of its foregoing rights shall not be deemed a waiver of any of its other rights, and each such right shall be deemed an ongoing right that may be asserted thereby at any time.

## D.      Consequences of Non-Occurrence of Effective Date

If the Effective Date does not occur within ninety (90) days following the Confirmation Date, or by such later dates after notice and hearing as is proposed by the Debtor, then upon motion by the Debtor and upon notice to such parties in interest as the Court may direct, (a) the Plan shall be null and void in all respects; (b) any settlement of Claims or Interests shall be null and void without further order of the Court; and (c) the time within which the Debtor may assume and assign or reject all Executory Contracts and Unexpired Leases shall be extended for a period of thirty (30) days after such motion is granted.

## ARTICLE IX

## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

## A.      Professional Fee Claims

### 1.      Final Fee Applications

All final requests for payment of Professional Fee Claims (the "**Final Fee Applications**") must be Filed no later than forty-five (45) days after the Effective Date.  Objections, if any, to Final Fee Applications of such Professionals must be Filed and served on Liquidating Joonko, the Plan Administrator, the requesting Professional and the Office of the United States Trustee for the District of Delaware no later than twenty-one (21) days from the date on which each such Final Fee Application is served and Filed.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Court.

### 2.      Employment of Professionals after the Effective Date

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or any order previously entered by the Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate.

The Professionals employed by the Debtor shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing and prosecution of Final Fee Applications.  Any time or expenses incurred in

the preparation, filing and prosecution of Final Fee Applications shall be disclosed by each Professional in its Final Fee Application and shall be subject to approval of the Court.

**B.      Substantial Contribution Claims**

Any Person or Entity that wishes to make a Substantial Contribution Claim based on facts or circumstances arising after the Petition Date must File an application with the Court, on or before the Administrative Claims Bar Date, and serve such application on  Liquidating Joonko, the Plan Administrator and the Office of the United States Trustee for the District of Delaware and as otherwise required by the Court and the Bankruptcy Code, or be forever barred from seeking such compensation or expense reimbursement.  Objections, if any, to the Substantial Contribution Claim must be Filed no later than the Administrative Claims Objection Deadline, unless otherwise extended by order of the Court.

**C.      Other Administrative Claims**

All other requests for payment of an Administrative Claim arising after the Petition Date, other than Professional Fee Claims, must be Filed with the Court and served on Liquidating Joonko and the Plan Administrator no later than the Administrative Claims Bar Date.  Unless Liquidating Joonko, the Plan Administrator or any other party in interest objects to an Administrative Claim by the Administrative Claims Objection Deadline, such Administrative Claim shall be deemed Allowed in the amount requested.  In the event that Liquidating Joonko, the Plan Administrator or any other party in interest objects to an Administrative Claim, the Court shall determine the Allowed amount of such Administrative Claim.

**ARTICLE X**

**EFFECTS OF CONFIRMATION**

**A.      Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, whether or not such Holders shall receive or retain any property or interest in property under the Plan, and their respective successors and assigns, including, but not limited to, Liquidating Joonko, the Plan Administrator and all other parties in interest in the Chapter 11 Case.

**B.      Discharge of the Debtor**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation shall not discharge Claims against the Debtor; provided, however, that no Claimholder or Interest Holder may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, the Debtor, Liquidating Joonko, the Plan Administrator and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

36

**C.** **Releases and Exculpation**

**1.** **Releases by the Debtor**

*As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, whether pursuing an action derivatively or otherwise, shall be deemed to forever release, waive and discharge all liabilities, claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever (other than for fraud, willful misconduct or gross negligence) in connection with or related to the Debtor, the Chapter 11 Case or the Plan (other than the rights of the Debtor, Liquidating Joonko and the Plan Administrator to enforce the Plan and the contracts, instruments, releases and other agreements embodied in the Plan and all other documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date, against (a) the Debtor's Professionals and Court-retained agents, (b) the Debtor's directors and officers employed by or serving the Debtor as of the Effective Date, and (c) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) and (b); provided, however, that nothing in this Article X.C.1 shall be a waiver of any defense, offset or objection to any Claim or Interest Filed against the Debtor and its Estate by any Person or Entity.*

**2.** **Exculpation and Limitation of Liability**

*Except as otherwise specifically provided in the Plan, none of (a) the Debtor, (b) the directors or officers of the Debtor serving the Debtor as of the Effective Date, (c) the Professionals or Court-retained agents of the Debtor, or (d) or any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (c), shall have or incur, and each is hereby released and exculpated from, any liability, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively in law or equity, to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence or willful misconduct, and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. For the avoidance of doubt, this exculpation only applies to any acts or omissions of the exculpated parties that occurred on and after the Petition Date through and including the Effective Date.*

**D. Injunction**

*Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons and Entities that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Debtor or the Estate are permanently enjoined from taking any of the following actions against the Debtor or its Estate, Liquidating Joonko, the Plan Administrator or its or their property on account of any such Claims or Interests: (i) commencing, conducting or continuing in any manner or in any place, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum); (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor; (v) acting or proceeding in any manner, in any place whatsoever, that does not comply with or is inconsistent with the provisions of the Plan; and (vi) prosecuting or otherwise asserting any Claim or Interest, including any right, claim or Cause of Action, released pursuant to the Plan; provided, however, that the injunction contemplated by this section shall not apply to the commencement or continuation of an action or proceeding by a governmental unit to which section 362(b)(4) of the Bankruptcy Code would be applicable.*

*As of the Effective Date, all Persons and Entities are permanently enjoined from obtaining any documents or other materials from current counsel for the Debtor that are in the possession of such counsel as a result of or arising in any way out of its representation of the Debtor, except in accordance with Article V.B of the Plan.*

**E. Term of Bankruptcy Injunction and Stays**

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in Article X.D shall apply.

**F. Compromises and Settlements**

Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle Claims (a) against it and (b) that it has against other Persons or Entities. The Debtor expressly reserves the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and claims that it may have against other Persons and Entities at any time up to and including the Effective Date. After the Effective Date, such right shall pass to Liquidating Joonko and shall be governed the terms of the Plan and Confirmation Order.

**G. Satisfaction of Subordination Rights**

All Claims against the Debtor and all rights and claims between or among Claim and/or Interest Holders relating in any manner whatsoever to distributions on account of Claims against

or Interests in the Debtor, based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Claimholders or Interest Holders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged and terminated as of the Effective Date.  Distributions to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Claimholder or Interest Holder by reason of any subordination rights or otherwise, so that each Claimholder and Interest Holder shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

## ARTICLE XI

## RETENTION OF JURISDICTION

**A.      Retention of Jurisdiction by the Court**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order, after substantial consummation of the Plan and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under section 507(a)(1) of the Bankruptcy Code;

2.      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of Liquidating Joonko and/or the Plan Administrator shall be made in the ordinary course of business and shall not be subject to the approval of the Court;

3.      Hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.      Effectuate performance of and payments under the provisions of the Plan;

5.      Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Chapter 11 Case, the Plan or the Plan Administration Agreement;

6.      Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other

agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Administration Agreement;

7.      Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan, including the Plan Administration Agreement;

8.      Consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

9.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation or enforcement of the Plan or the Confirmation Order;

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Administration Agreement;

12.     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

13.     Except as otherwise limited herein, recover all assets of the Debtor and property of the Estate, wherever located;

14.     Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

15.     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

16.     Hear and determine all Causes of Action;

17.     Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to the Plan;

18.     Hear and determine all matters related to (i) the winding up of the Debtor's affairs and (ii) the activities of Liquidating Joonko and/or the Plan Administrator, including (A) challenges to or approvals of Liquidating Joonko's or the Plan Administrator's activities, (B) resignation, incapacity or removal of the Plan Administrator and successor Plan Administrator, (C) reporting by, termination of and accounting by Liquidating Joonko and the Plan Administrator and (D) release of the Plan Administrator from its duties;

40

19.     Hear and determine disputes with respect to compensation of (i) Liquidating Joonko's professionals and (ii) the Plan Administrator and its professionals;

20.     Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided herein, including any dispute relating to any liability arising out of any termination of employment or the termination of any employee benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

21.     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

22.     Enforce all orders previously entered by the Court; and

23.     Enter a final decree closing the Chapter 11 Case.

**B.     Failure of Court to Exercise Jurisdiction**

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Article XI.A of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**A.     Modifications and Amendments**

The Debtor may alter, amend or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.

After the Confirmation Date and prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, as may be necessary to carry out the purpose and effect of the Plan, so long as such proceedings do not adversely affect the treatment of Holders of Claims and Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Court.

**B.     Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, then the Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be

invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C.    Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person or Entity.

## D.    Payment of Statutory Fees

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or as soon as practicable after the Effective Date. The Debtor, prior to the Effective Date, and Liquidating Joonko, from and after the Effective Date, shall pay statutory fees to the U.S. Trustee in accordance with 28 U.S.C. § 1930 until the Chapter 11 Case is closed or converted and/or the entry of a final decree. In addition, the Debtor, through Liquidating Joonko, shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against the Debtor and its Estate.

## E.    Revocation, Withdrawal or Non-Consummation

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person or Entity, (ii) prejudice in any manner the rights of such Debtor or any other Person or Entity or (iii) constitute an admission of any sort by the Debtor or any other Person or Entity.

## F.    Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtor, Liquidating Joonko or the Plan Administrator shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail or (v) facsimile transmission, (c) deemed to have been duly given or made

when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

Ilan Band
Joonko Diversity Inc.
157 Columbus Ave., 4th Floor
New York, New York 10023

with a copy to:

David R. Hurst
McDermott Will & Emery LLP
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, Delaware 19801
Telephone: (302) 485-3900
dhurst@mwe.com

## G.    Plan Supplement(s)

Exhibits to the Plan not attached hereto shall be Filed in one or more Plan Supplements by the Plan Supplement Filing Date.  Any Plan Supplement (and amendments thereto) Filed by the Debtor shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein.  Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the Debtor's case website (https://cases.creditorinfo.com/joonko) or the Court's website (www.deb.uscourts.gov).  Copies of case pleadings, including the Plan Supplements, also may be examined between the hours of 8:00 a.m. and 4:00 p.m., Monday through Friday, excluding federal holidays, at the Office of the Clerk of the Court, 824 N. Market St., 3rd Floor, Wilmington, Delaware 19801.  Finally, copies of case pleadings may be obtained by written request to the Claims Agent, at info@bmcgroup.com.  The documents contained in any Plan Supplements shall be approved by the Court pursuant to the Confirmation Order.

Dated:  Wilmington, Delaware
        July 8, 2024


JOONKO DIVERSITY INC.,
Debtor and Debtor-in-Possession


By:   */s/ Ilan Band*
        Ilan Band
        Chief Executive Officer


MCDERMOTT WILL & EMERY LLP


By:   */s/ David R. Hurst*
        David R. Hurst (I.D. No. 3743)
        The Brandywine Building
        1000 N. West Street, Suite 1400
        Wilmington, Delaware 19801
        Telephone: (302) 485-3900
        dhurst@mwe.com

        - and -

        Catherine Lee
        444 West Lake Street, Suite 4000
        Chicago, Illinois 60606
        Telephone: (312) 372-2000
        clee@mwe.com

*Counsel for the Debtor and*
*Debtor-in-Possession*

<u>EXHIBIT A to PLAN</u>

<u>Plan Administration Agreement</u>

## PLAN ADMINISTRATION AGREEMENT

This Plan Administration Agreement (the "Agreement") is made this ___ day of, September, 2024, between Joonko Diversity Inc. and Ilan Band, in his capacity as Plan Administrator.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the *Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor*, dated May 31, 2024, and as the same may from time to time be amended (the "**Plan**").

## RECITALS

WHEREAS, on May 14, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court");

WHEREAS, on May 31, 2024, the Debtor filed the *Disclosure Statement With Respect to Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor* [Docket No. 40] (as amended, the "Disclosure Statement");

WHEREAS, on September ___, 2024, the Court entered its *Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor* [Docket No. ___];

WHEREAS, Liquidating Joonko will continue to exist after the Effective Date in accordance with the laws of the State of Delaware and pursuant to the amended and restated articles of incorporation and by-laws of Joonko;

WHEREAS, on the Effective Date, the members of the board of directors of the Debtor shall be deemed to have resigned;

WHEREAS, the Plan Administrator shall serve as the sole shareholder, sole officer and sole director of Liquidating Joonko;

WHEREAS, the rights, powers and duties of Liquidating Joonko under the Plan shall be exercisable by the Plan Administrator, on behalf of Joonko and the Estate;

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1    Definitions.  The following definitions apply to the capitalized terms wherever those terms appear throughout the Agreement.  Any capitalized term defined in the prefatory paragraph, the recitals, this Section or any Section below shall have the meaning ascribed to such

term therein.  Any capitalized term not otherwise defined in the Agreement shall have the meaning set forth in the Plan.

(a)      "General Account(s)" has the meaning set forth in Section 3.1(a)(i) hereof.

(b)      "General Distributions" has the meaning set forth in Section 3.1(a)(i) hereof.

(c)      "Indemnified Parties" has the meaning set forth in Section 5.6 hereof.

(d)      "Underfunded Account/Reserve" means any of the General Account(s) or Reserves or other accounts or reserves established pursuant to the Agreement in which there are insufficient funds to pay operating expenses, Allowed Claims or Allowed Interests which should have been paid from such General Account(s) or Reserves or other accounts or reserves established hereunder.

1.2      <u>Interpretation</u>.  The headings in the Agreement are for convenience only and shall not affect the meaning or understanding of the Agreement or any provision hereof.  Words defined, denoted or stated in the singular form also include the plural form and vice versa, and words defined, denoted or stated in the masculine, feminine or neuter form include each of the masculine, feminine and neuter forms.  The word "including" means "including but not limited to."  The word "or" is not exclusive.

1.3      <u>Particular Words</u>.  Reference in the Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under the Agreement.  The words "hereof," "herein," "hereto" and similar terms shall refer to the Agreement and not to any particular Section or Article of the Agreement.

## ARTICLE II
## ACCEPTANCE OF POSITIONS AND OBLIGATION
## TO PAY ALLOWED CLAIMS AND ALLOWED INTERESTS

2.1      <u>Acceptance</u>.  Ilan Band (a) accepts employment as the Plan Administrator and accepts the duty of serving as the sole shareholder, sole officer and sole director of Liquidating Joonko, (b) agrees to cause Liquidating Joonko to observe and perform all duties and obligations imposed upon Liquidating Joonko under the Plan, orders of the Court and applicable law, and (c) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Agreement, the Plan, orders of the Court and applicable law.

2.2      <u>Payment of Claims and Interests</u>.  Ilan Band, solely in his capacity as the Plan Administrator, agrees to cause Liquidating Joonko to pay all Allowed Claims and Allowed Interests in accordance with the terms and conditions of the Agreement, the Plan and all orders of the Court.

## ARTICLE III
## OBLIGATIONS OF THE PLAN ADMINISTRATOR

3.1     Establishment and Maintenance of Accounts and Reserves

(a)     Establishment of Initial Accounts and Reserves.  On the Effective Date or as soon thereafter as practicable, if not previously established and funded by the Debtor on or before the Effective Date, the Plan Administrator shall cause Liquidating Joonko to establish and fund the following accounts and reserves:

(i)     General Account(s):  One or more general accounts (the "General Account(s)"), (A) into which shall be deposited all funds not required or permitted to be deposited into any other account or Reserve described in or contemplated by the Agreement and the Plan, and (B) from which shall be made all Distributions ("General Distributions") (1) on the Distribution Date on account of Claims and Interests that were Allowed Claims or Allowed Interests on or before the Effective Date and (2) Distributions to be made on each subsequent Periodic Distribution Date or otherwise in accordance with the terms of the Plan; provided, however, that if there is an Underfunded Account/Reserve, then General Distributions from the General Account shall cease and funds in the General Account shall be paid into such Underfunded Account/Reserve until it is no longer underfunded, at which time General Distributions may commence again on the next Periodic Distribution Date.

(ii)     Professional Fee Reserve.  An account, designated as an "professional fee reserve," as described more fully in Article V.E.1 of the Plan (the "Professional Fee Reserve").

(iii)     Administrative Claims Reserve.  An account, designated as an "administrative claims reserve," as described more fully in Article V.E.2 of the Plan (the "Administrative Claims Reserve").

(iv)     Indemnification Reserve.  An account, designated as an "indemnification reserve," as described more fully in Article V.E.3 of the Plan (the "Indemnification Reserve").

(v)     Operating Reserve.  An account, designated as an "operating reserve," as described more fully in Article V.E.4 of the Plan (the "Operating Reserve").

(vi)     Disputed Claims Reserve.  An account, designated as an "disputed claim reserve," as described more fully in Article VI.H.3 of the Plan (the "Disputed Claims Reserve").

(vii)     Disputed Interests Reserve.  An account, designated as an "disputed interests reserve," as described more fully in Article VI.H.4 of the Plan (the "Disputed Interests Reserve").

(viii)    Unclaimed Distribution Reserve.  An account designated as an "unclaimed distribution reserve," as described more fully in Article VI.C.2 of the Plan (the "Unclaimed Distribution Reserve").

(b)    Subsequent Establishment of Accounts and Reserves.  On or after the Effective Date, the Plan Administrator (i) shall establish and maintain such additional accounts and reserves as may be required by applicable law or by order of a court of competent jurisdiction and (ii) may establish and maintain such additional accounts and reserves as it deems necessary or desirable to carry out the provisions of the Agreement and the Plan.

(c)    The amounts to be initially deposited in the General Account(s), Operating Reserve, Disputed Claims Reserve, Disputed Interests Reserve and Unclaimed Distribution Reserve shall be determined by the Plan Administrator in accordance with the terms of the Plan.

(d)    If at any time the Plan Administrator determines that a Reserve (i) contains Cash in excess of the amount required to adequately maintain such Reserve, the Plan Administrator shall transfer such surplus Cash, first, to any Underfunded Account/Reserve (but only to the extent of any underfunding) and, next, to the General Account(s), or (ii) does not contain Cash in an amount sufficient to adequately maintain such Reserve, then the Plan Administrator shall transfer to such Reserve Cash from the General Account(s) or any overfunded General Account or Reserve until the deficit in such Reserve is eliminated.

3.2    Sources of Cash for Plan Distributions.  Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary to make payments pursuant to the Plan shall be obtained from Liquidating Joonko's Cash balances and the liquidation of Liquidating Joonko's remaining non-Cash assets, if any.

3.3    Conversion of Assets to Cash.  The Plan Administrator shall sell or otherwise dispose of, and liquidate or convert into Cash, any non-Cash assets of Liquidating Joonko in a manner compatible with the best interests of the Holders of Allowed Claims and Allowed Interests who are entitled to distributions under the Plan.

3.4    Transactions with Related Persons.  Notwithstanding any other provisions of the Agreement, the Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the assets of Liquidating Joonko to, or contract with, (a) any relative, employee or agent (acting in their individual capacities) of the Plan Administrator or (b) any Person or Entity of which any employee or agent of the Plan Administrator is an affiliate by reason of being a trustee, director, officer, partner or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares or other equity interest, of such Person or Entity unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Court and the Court determines that the terms of such transaction are fair and reasonable to Liquidating Joonko and no less favorable to Liquidating Joonko than terms available for a comparable transaction with unrelated Persons and Entities.

3.5     <u>Investment of Cash</u>.  The Plan Administrator shall invest Liquidating Joonko's Cash, including the Cash in any Reserve, in (a) direct obligations of the United States of America or obligations of any agency or instrumentality thereof that are backed by the full faith and credit of the United States of America, including funds consisting solely or predominantly of such securities; (b) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (c) any other investments that may be permissible under (i) the Bankruptcy Code or (ii) any order of the Court entered in the Chapter 11 Case.  Such investments shall mature in such amounts and at such times as the Plan Administrator shall deem appropriate to provide funds when needed to transfer funds or make payments in accordance with the Agreement and the Plan.  The interest or other income earned on the investments of the Cash in any given General Account or Reserve, or other account or reserve established pursuant to the Agreement, the Plan or any order of the Court shall constitute a part of such account or reserve unless and until transferred or distributed pursuant to the terms of the Agreement, the Plan or order of the Court.

3.6     <u>Treatment of Accounts</u>.  For purposes of the Agreement, unless otherwise ordered by the Court, the Plan Administrator may pool for investment purposes any funds which may or which are required to be segregated or placed into separate General Account(s) or Reserves under the Agreement or the Plan; <u>provided</u>, <u>however</u>, that the Plan Administrator shall treat such funds as segregated accounts in its books and records.  In addition, notwithstanding any requirement that distributions hereunder to any Holder of an Allowed Claim or Allowed Interest on any Periodic Distribution Date be made from a specified General Account or Reserve, disbursements may be made as a single aggregate to such Holder of an Allowed Claim or Allowed Interest; <u>provided further</u>, <u>however</u>, that the Plan Administrator shall treat the funds so distributed as having been distributed from the appropriate General Account or Reserve in the Plan Administrator's books and records.

3.7     <u>Use of Assets</u>.  All Cash or other property held or collected by the Plan Administrator or Liquidating Joonko shall be used solely for the purposes contemplated by the Agreement and the Plan.

3.8     <u>Books, Records and Tax Returns</u>.  The Plan Administrator shall maintain books and records and prepare and file such tax forms and returns as are required to be filed by Liquidating Joonko and/or the Debtor under applicable law.

3.9     <u>Reporting</u>.  On or as soon as practicable after each yearly anniversary of the Effective Date, the Plan Administrator shall mail to all Holders of filed and scheduled Claims and Interests (except any Disallowed Claims or Disallowed Interests) a report covering the preceding yearly period (a) itemizing the receipt and disposition of all funds by the Plan Administrator (including all payments in respect of professional fees and expenses), (b) listing or summarizing all unresolved or outstanding Disputed Claims and Disputed Interests and (c) listing the balance remaining in each General Account and Reserve.

**ARTICLE IV**
**POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR**

4.1     <u>Powers of the Plan Administrator</u>.  The Plan Administrator shall have the following specific powers in addition to any powers conferred upon the Plan Administrator by any other section or provision of the Agreement, by the Plan or by order of the Court; <u>provided</u>, <u>however</u>, that the enumeration of the following powers shall not be considered in any way to limit or control the power of the Plan Administrator to act as specifically authorized by any other section or provision of the Agreement, the Plan or further order of the Court; <u>provided further</u>, <u>however</u>, that the Plan Administrator, in its capacity as the sole officer and director of Liquidating Joonko, shall have the power and authority to act for Liquidating Joonko (without Court approval, unless such approval is explicitly required herein or in the Plan) and shall exercise such powers and authority in the Plan Administrator's reasonable discretion:

(a)     to exercise all power and authority that may be exercised, and take all proceedings and acts that may be taken, by any officer, director or shareholder of Liquidating Joonko, including, without limitation, the amendment of the articles of incorporation and by-laws of Liquidating Joonko and the dissolution of Liquidating Joonko; <u>provided</u>, <u>however</u>, that the Plan Administrator shall not amend the articles of incorporation of Liquidating Joonko to change the fundamental purpose of the corporation without first obtaining an order of the Court;

(b)     to invest Liquidating Joonko's Cash (including, without limitation, Cash in the Reserves) in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, including funds consisting solely or predominantly of such securities; (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (C) any other investments that may be permissible under (I) the Bankruptcy Code or (II) any order of the Court entered in the Chapter 11 Case;

(c)     to calculate and pay all distributions required or permitted to be made under the Agreement, the Plan, the Confirmation Order and other orders of the Court;

(d)     to establish, fund and/or administer the General Account(s) and the Reserves, and such other accounts and reserves as may be authorized by the Agreement, the Plan or order of the Court;

(e)     to employ, supervise and compensate from the Operating Reserve the Plan Professionals and other Persons and Entities retained to represent the interests of and serve on behalf of Liquidating Joonko and the Plan Administrator;

(f)     to obtain such insurance as deemed reasonably necessary by the Plan Administrator;

(g)     to make and file all necessary tax returns for the Debtor and Liquidating Joonko;

(h)     to object to or seek to subordinate Claims or Interests filed against the Debtor's Estate on any basis;

(i)     to settle all Disputed Claims and Disputed Interests, without the need for Court approval;

(j)     to seek estimation of contingent or unliquidated claims under section 502(c) of the Bankruptcy Code;

(k)     to seek determination of tax liability under section 505 of the Bankruptcy Code;

(l)     to evaluate, prosecute, settle, dismiss, abandon or otherwise dispose of turnover actions under sections 542 and 543 of the Bankruptcy Code;

(m)     to evaluate, prosecute, settle, dismiss, abandon or otherwise dispose of the Causes of Action;

(n)     to dissolve Liquidating Joonko as contemplated herein and by the Plan;

(o)     to dissolve Liquidating Joonko's wholly-owed subsidiary, Joonko Diversity Ltd., under applicable law;

(p)     to close the Chapter 11 Case;

(q)     to perform any and all acts necessary or appropriate for the conservation and protection of the assets of the Estate and Liquidating Joonko;

(r)     to exercise all powers and rights, and take all actions, contemplated by or provided for in the Agreement; and

(s)     to take any and all other actions necessary or appropriate to implement or consummate the Agreement and the Plan.

## ARTICLE V
## THE PLAN ADMINISTRATOR

5.1     <u>Resignation</u>.  The Plan Administrator may resign at any time by filing a motion with the Court seeking the appointment of a successor Plan Administrator; <u>provided</u>, <u>however</u>, that such resignation, which shall be applicable to the Plan Administrator in its capacity as such and as the sole shareholder, sole officer and sole director of Liquidating Joonko, shall not become effective until Court approval of a successor Plan Administrator (and sole shareholder, officer and director of Liquidating Joonko) in accordance with Section 5.3 hereof.

5.2     <u>Removal</u>.  Upon the request of any party in interest for cause, the Court may remove the Plan Administrator.  For purposes of this Section 5.2, "cause" shall mean (a) an act of fraud, embezzlement or theft in connection with the Plan Administrator's duties or in the course of its employment in such capacity, (b) the intentional wrongful damage to property of

Liquidating Joonko, (c) the intentional wrongful disclosure of confidential information of Liquidating Joonko resulting in material harm to Liquidating Joonko, (d) gross negligence, bad faith or willful misconduct by the Plan Administrator in connection with the performance of its duties under the Agreement, or (e) intentional and material breach by the Plan Administrator of the provisions of the Agreement, the Plan or any order of the Court.  Unless the Court orders immediate removal, the Plan Administrator shall continue to serve until a successor Plan Administrator is appointed, and such appointment becomes effective, in accordance with Section 5.3 hereof.

5.3     Appointment of Successor Plan Administrator.  In the event of a vacancy by reason of the death or immediate removal of the Plan Administrator or prospective vacancy by reason of resignation or removal, the Court shall select a successor Plan Administrator (which Person also shall serve as the sole shareholder, sole officer and sole director of Liquidating Joonko).  The successor Plan Administrator's appointment shall be effective upon the approval of the Court after a hearing before the Court on not less than twenty-one (21) days' notice to all Holders of filed and scheduled Claims and Interests (except any Disallowed Claims or Disallowed Interests).  Every successor Plan Administrator appointed hereunder shall execute, acknowledge and deliver to the Court and the retiring Plan Administrator, if any, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Plan Administrator, without any further act, shall (a) become vested with all the rights, powers and duties of the Plan Administrator and (b) become the sole shareholder, sole officer and sole director of Liquidating Joonko; provided, however, that no Plan Administrator shall be liable for the acts or omissions of any prior or later Plan Administrator.

5.4     Continuity.  Unless otherwise ordered by the Court, the death, resignation or removal of the Plan Administrator shall not operate to terminate any agency or employment created by the Agreement or invalidate any action theretofore taken by the Plan Administrator.  In the event of the resignation or removal of the Plan Administrator, such Plan Administrator shall (a) execute and deliver by the effective date of resignation or removal such documents, instruments and other writings as may be reasonably required to effect the termination of the Plan Administrator's capacity under the Agreement and (b) assist and cooperate in effecting the assumption of such Plan Administrator's obligations and functions by the successor Plan Administrator.  If for any reason the Plan Administrator fails to execute the documents described in section (a) of the preceding sentence, the Court may enter such orders as are necessary to effect termination of such Plan Administrator's capacity under the Agreement.

5.5     Compensation.  The terms of compensation of the Plan Administrator are set forth on Exhibit A hereto, and payment of such compensation shall be made from the Operating Reserve.  The Court, after notice and a hearing, may, with the consent of the Plan Administrator, alter the amount, terms or conditions of the Plan Administrator's compensation.  Any successor Plan Administrator shall receive such reasonable compensation from the Operating Reserve for service as the Plan Administrator as may be approved by the Court.

5.6     Standard of Care; Indemnification; Exculpation

(a)     Liquidating Joonko shall indemnify and hold harmless the Plan Administrator (in its capacity as such and as an officer and a director of Liquidating

8

Joonko) and the Plan Professionals (collectively, the "Indemnified Parties") from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to reasonable attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from any such Indemnified Party's willful misconduct or gross negligence, with respect to Liquidating Joonko or the implementation or administration of the Agreement or the Plan. To the extent an Indemnified Party asserts a claim for indemnification as provided above, the reasonable legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced out of the Operating Reserve. The indemnification provisions of the Agreement shall remain available to and be binding upon any former Plan Administrator or the estate of any decedent Plan Administrator and shall survive the termination of the Agreement.

(b)     The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if it relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, facsimiles and e-mails, to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. The Plan Administrator may consult with counsel and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator. The Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon. The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Court concerning the Agreement, the Plan or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

5.7     Insurance. The Plan Administrator shall be authorized to obtain all insurance coverage that is reasonably necessary for the Plan Administrator, the Plan Professionals, Liquidating Joonko and the officers and directors of Liquidating Joonko, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of Liquidating Joonko, and (ii) the liabilities, duties and obligations of the Plan Administrator, Liquidating Joonko, the directors and officers of Liquidating Joonko, and the Plan Professionals (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period after the termination of the Agreement.

5.8     Reliance by Persons Dealing with the Plan Administrator. In the absence of actual knowledge to the contrary, any Person or Entity dealing with Liquidating Joonko shall be entitled to rely on the authority of the Plan Administrator to act on behalf of Liquidating Joonko and shall have no obligation to inquire into the existence of such authority.

## ARTICLE VI
## TERMINATION

6.1     Termination.  The Agreement shall terminate upon the Plan Administrator's completion of the Dissolution Requirements set forth in Article V.A.6 of the Plan.  Except as otherwise specifically provided herein, after the termination of the Agreement, the Plan Administrator shall have no further duties or obligations hereunder.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

7.1     Descriptive Headings.  The headings contained in the Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of the Agreement.

7.2     Amendment.  The Agreement may not be amended except by an instrument executed (i) by the Debtor and the Plan Administrator on or before the Effective Date and (ii) by the Plan Administrator following the Effective Date.

7.3     Governing Law.  The Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the rules of conflict of laws of the State of Delaware or any other jurisdiction.

7.4     Counterparts; Effectiveness.  The Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  The Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

7.5     Severability; Validity.  If any provision of the Agreement or the application thereof to any Person, Entity or circumstance is held invalid or unenforceable, the remainder of the Agreement, and the application of such provision to other Persons, Entities or circumstances, shall not be affected thereby, and to such end, the provisions of the Agreement are agreed to be severable.

7.6     Notices.  Any notice or other communication to the Plan Administrator or Liquidating Joonko hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of five (5) Business Days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

**Joonko Diversity Inc.**
**c/o Ilan Band, Plan Administrator**
**157 Columbus Ave., 4th Floor**
**New York, New York 10023**
**ilan@joonko.com**

**With a copy to:**

**David R. Hurst**
**McDermott Will & Emery LLP**
**The Brandywine Building**
**1000 N. West Street, Suite 1400**
**Wilmington, Delaware 19801**
**Telephone: (302) 485-3900**
**dhurst@mwe.com**

7.7    <u>Relationship to Plan and Confirmation Order</u>.  To the extent that the terms of the Agreement are inconsistent with the terms set forth in the Plan, the terms of the Plan shall govern and control.  To the extent that the terms of the Agreement are inconsistent with the terms set forth in the Confirmation Order, the terms of the Confirmation Order shall govern and control.

*[Remainder Of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties have either executed and acknowledged the Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers as of the date first above written.

**JOONKO DIVERSITY INC.**


By:_____
    Name: Ilan Band
    Title: Chief Executive Officer


**PLAN ADMINISTRATOR**


By:_____
    Name: Ilan Band

<u>EXHIBIT A</u>

<u>Plan Administrator Compensation</u>

The Plan Administrator shall be compensated as follows:

(1)    until the first anniversary of the Effective Date, $12,000 per month;

(2)    between the first and second anniversaries of the Effective Date, $8,000 per month; and

(3)    after the second anniversary of the Effective Date, $5,000 per month.

<u>EXHIBIT B to PLAN</u>

Second Amended and Restated Certificate
<u>of Incorporation of Joonko Diversity Inc.</u>

*[To Be Filed in Plan Supplement]*

EXHIBIT C to PLAN

Amended and Restated By-laws of Joonko Diversity Inc.

*[To Be Filed in Plan Supplement]*

<u>EXHIBIT D to PLAN</u>

<u>Contracts To Be Assumed Under Plan</u>

*[To Be Filed in Plan Supplement]*

<u>EXHIBIT E to PLAN</u>

<u>Non-Exclusive List of Retained Claims and Causes of Action</u>

The following is a non-exclusive list of potential or actual parties against whom the Debtor could assert or has asserted a claim or cause of action, which claims and causes of action are being transferred to Liquidating Joonko under the Plan and pursuant to the authority of section 1123(b)(3)(B) of the Bankruptcy Code, subject to the releases and exculpations in the Plan.  Defined terms not defined herein are used as defined in the *Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor* to which this Exhibit E is attached.  The Plan Proponent reserves its rights to modify this list to amend parties or otherwise update this list, but disclaims any obligation to do so.  In addition to possible causes of action and claims against the persons or entities listed herein, the Debtor may have, in the ordinary course of business, causes of action, claims or rights against vendors or others with whom it deals in the ordinary course of business ("Ordinary Course Claims") to the extent such causes of action, claims or rights have not been assigned to a third party.  Liquidating Joonko reserves its right to enforce, sue on, settle or compromise (or decline to do any of the foregoing) the Ordinary Course Claims and all other claims and causes of action of the Debtor and the Estate, including but not limited to the specific claims and causes of action described below, subject to the releases and exculpations in the Plan.

1.      All claims and causes of action of the Debtor arising before the Effective Date (regardless of whether arising before or after the Petition Date) against any persons or entities, including but not limited to (a) claims and causes of action for breach of contract, negligence, professional negligence, breach of fiduciary duty or other duties, or fraud, against the Debtor's officers, directors, accountants and/or auditors prior to the Petition Date; and (b) claims and causes of action against insurance companies and brokers arising in connection with directors and officers, fidelity, general liability, property, workers compensation and any other insurance coverages and policies, including but not limited to claims under the insurance coverages and policies, and claims and causes of action for breach of contract, fraud, negligent misrepresentation, professional negligence, and breach of the duty of good faith and fair dealing.

2.      Claims and causes of action, including but not limited to those based on avoidance actions and powers, against any and all parties listed in response to Question 4 in the Debtor's Statement of Financial Affairs (including any amendments thereto) as receiving payments from the Debtor in the one (1) year preceding the Petition Date.

3.      Claims and causes of action against Ilit Raz.

4.      Claims and causes of action against any and all current and former directors, officers and insiders of the Debtor.

5.      Claims and causes of action against any creditor of the Debtor to recharacterize and/or subordinate such creditor's claim against the Debtor.

6.      Any and all rights and claims under contracts, leases, loan agreements, syndications, or any other agreement not cancelled pursuant to the Plan, including but not limited to collection actions and claims.

7.      Any and all objections to claims asserted under section 502 of the Bankruptcy Code against the Debtor, whether based upon claims filed on the Debtor's claims registry or equitably asserted.

8.      Any and all objections to claims asserted under section 503(b) of the Bankruptcy Code against the Debtor, whether based upon claims filed on the Debtor's claims registry or equitably asserted.

9.      Any and all objections to claims asserted under section 507 of the Bankruptcy Code against the Debtor, whether based upon claims filed on the Debtor's claims registry or otherwise asserted.

10.     Liquidating Joonko expressly reserves all rights, defenses and counterclaims against any person or entity that has asserted or could assert a claim against or interest in the Debtor.

**All of the above persons or entities include their agents, employees, professionals, representatives, officers, directors, members, partners, successors, affiliates and assigns. The Plan Proponent expressly reserves the right to amend or supplement this list at any time prior to the Confirmation Hearing.**